TOWN OF NEWBURGH *v.* JONES

[No. 17,326. Filed January 30, 1945.]

*Herman L. McCray, Curtis C. Plopper, J. William Davidson,* all of Evansville, and *Joseph A. Wicker,* of Indianapolis, for appellant.

*Ireland, Denton & Fish,* and *Irma H. Ireland,* of Evansville, for appellee.

CRUMPACKER, J.—While engaged in the performance of his duties as Town Marshal and Street Commissioner of the appellant Town of Newburgh, the appellee's husband, Joseph Jones, on June 5, 1943, received an electric shock and died of coronary occlusion the following September 29. The appellee filed application for relief under the provisions of the Workmen's Compensation Act and, upon the hearing of such application before the Industrial Board, all facts essential and necessary to a recovery were agreed to and stipulated except the ultimate fact as to the causal connection between the electric shock and Joseph Jones' death. This issue was tried by the board and resulted in a finding that death was the proximate result of said electric shock and an appropriate award was duly entered. This appeal challenges the sufficiency of the evidence to sustain the finding on such issue.

Before the appellee's claim was heard the appellant filed a written request with the Industrial Board for an autopsy upon the body of Joseph Jones alleging therein that such autopsy would disclose the fact as to whether said decedent's death was due to electric shock or to causes unconnected therewith. This request was denied and on such denial the appellant predicates error.

Thus we have but two questions before us: (1) Is

there any substantial evidence in the record tending to prove that the electric shock suffered by the decedent was the cause of his death; and (2) when and under what circumstances does an employer have the right to an autopsy?

The following hypothetical question was propounded to the witness, Justice F. Wynn, a duly licensed and practicing physician of Evansville, Indiana:

"If the plaintiff's deceased, Joseph Jones, was 60 years of age and prior to the 5th day of June, 1943, was a stout and healthy man, and, on that day he received a shock of electricity from a wire carrying 2300 volts of electricity, which shock threw him some 20 feet and from which he became unconscious; that thereafter he was taken to his home and because of said shock was required to remain in bed for two weeks; that thereafter he continued his work as town marshall and street commissioner of the town of Newburgh but that after said shock he had dizzy spells and was unable to breathe properly and had no appetite for food and that he was unable to sleep and rest at night and that on the 29th day of September, 1943, following said accident Joseph Jones died, from the facts stated, doctor, what is your opinion as to whether or not this electric shock could have caused his death or approximately contributed thereto?"

Before it was answered this question was amended to further assume that the decedent had had no heart trouble and worked every day prior to the time he received the electric shock. Upon the above hypothesis the doctor testified as follows:

"When you have an electric shock of high voltage, it is my understanding, that you have a complete contraction of all muscles. I presume that this man died of a heart condition. The heart itself is made up of muscle tissue and bound to have gone through the same thing the muscles of the body would, and I really believe the shock contributed to his death.

"It is a complete contraction of the muscles so that you have a bleeding of the muscles. This man may at the time of the accident had some bleeding in the muscle of the heart and as a result thereof it was a weakness of the heart itself. A severe electric shock causes a weakening of the muscle material and in this condition if he would have lifted anything heavy could have blown out a plug in the heart."

The appellant contends that this testimony is all the evidence there is in the case that in any way tends to establish a causal connection between the electric shock suffered by the decedent on June 5, 1943, and his death in the following September, but urges, with unquestioned sincerity, that said testimony is so vague, speculative and conjectural that it constitutes nothing more than the witness' surmise or guess and therefore is not such substantial evidence as the law requires in support of a finding of ultimate fact.

It is admitted by both parties that the decedent died of coronary occlusion, a specie of ailment wherein the blood supply is blocked off from the heart muscle in a rather sudden attack. We think it will readily be agreed that the task of making an intelligent finding of fact on the question as to whether such a "heart attack" in September could have any connection with an electric shock suffered three months previously would be greatly facilitated by the credible testimony of a witness or witnesses possessing expert knowledge of the effect of electricity on the human system. Such expert witnesses are permitted to express opinions on fact within their knowledge or upon assumed facts supported by the evidence in the case and stated to them by way of hypothetical questions. We agree with the appellant in the general principle that expert opinion testimony should not be allowed to extend

to the field of baseless conjecture concerning matters not susceptible of reasonably accurate conclusions, but we cannot agree that the testimony here under scrutiny can be so characterized. We can see nothing in the nature of a surmise or guess in the doctor's statement that an electric shock of high voltage causes a complete contraction of all the muscles of the body, including the heart, to such an extent as to cause them to bleed and that "I really believe the shock contributed to his death." This is a positive statement as to the effect of high voltage electricity on the heart and an opinion that the shock of June 5, 1943, contributed to or helped to cause the fatal coronary occlusion the following September. The appellant further questions the probative value of Dr. Wynn's testimony through the contention that the assumed facts upon which such opinion is based are not supported by the evidence. It is fundamental, we think, that the opinion of an expert in answer to a hypothetical question should be predicated on facts which the evidence in the case tends to prove and if such question assumes material facts of which there is no evidence, an opinion based thereon has no probative value. *Public Utilities Co.* v. *Handorf* (1916), 185 Ind. 254, 112 N. E. 775. With this principle in mind we have carefully examined the evidence and find only one assumed fact in the hypothetical question propounded to Dr. Wynn of which there is no evidence. The assumed fact that the decedent was thrown 20 feet by the electric shock is entirely without foundation, the undisputed evidence being that such distance was not to exceed four or five feet. We do not regard the distance the decedent was thrown as an essential fact. The evidence is undisputed that he grasped a wire charged with 2400 volts of electricity while standing on a wet pavement. It can be reasonably inferred that he

got a severe shock thereby and whether he was thrown 20 feet, five feet, or not at all, is of little consequence in the absence of evidence that the volume of electricity he received can be measured by the distance he was thrown. It was held in *Louisville, New Albany and Chicago Railway Company* v. *Falvey* (1886), 104 Ind. 409, 3 N. E. 389, 4 N. E. 908, that where some of the facts assumed in a hypothetical question are eliminated by a subsequent ruling on a motion to strike out, yet if facts remain upon which an opinion may properly be based, it is not error to refuse to strike the entire opinion, but it should go to the jury for what it is worth, although the elimination of some of the facts may weaken its value. With the assumption that the decedent was thrown 20 feet by his contact with the electric wire eliminated we are of the opinion that sufficient facts remain in the question upon which Dr. Wynn's opinion can properly be based. The evidence was proper and if accepted as true by the trier of the facts, as it evidently was, it is sufficient to support the award.

We now come to the question of alleged error in refusing the appellant's request for an autopsy on the body of the deceased. The Workmen's Compensation Act provides as follows:

> "The employer, or the industrial board, shall have the right in any case of death to require an autopsy at the expense of the party requiring same.
>
> "No autopsy shall be held in any case, by any person, without notice first being given to the widow or next of kin, if they reside in this state or their whereabouts can reasonably be ascertained, of the time and place thereof and reasonable time and opportunity given such widow or next of kin to have a representative or representatives present to witness the same: Provided, If such notice is not given all evidence obtained by such autopsy shall be suppressed on motion duly made to the

industrial board." § 40-1227, Burns' 1940 Replacement (Supp.).

In construing the above statute this court said:

"The purpose of the law-making body in enacting such statute was no doubt for the protection of the employer against unjust claims, particularly against the payment of compensation where death is due to natural causes instead of by accident. We do not believe that it was the intention of the legislature that an autopsy could be demanded in every case of death. Such a construction would render the provision unreasonable where the cause of death is clearly apparent without it,—where the cause of the death is not uncertain and is not in dispute. The right to an autopsy is to be exercised with caution. It is one calculated under the most favorable circumstances to cause some distress of mind to the family of the deceased.

"There was a dispute in this case as to the cause of decedent's death, and under the construction of the statute herein declared, appellant had the right, if properly exercised, to have an autopsy performed. Where, as here, the legislature has not provided the procedure for its enforcement, that adopted must be reasonable both as to the time and the occasion for its exercise." *Indianapolis Abattoir Co.* v. *Bryant* (1918), 67 Ind. App. 225, 119 N. E. 24.

It seems clear that the statute as above construed gives the employer, in any case in which the cause of death is disputed, the absolute right to hold an autopsy on the body of the deceased providing the procedure adopted is reasonable both as to the time and occasion of its exercise and providing further that proper notice thereof is given. In other words an employer's right to an autopsy, when exercised under the circumstances and in the manner above indicated, is beyond the jurisdiction of the Industrial

Board to either deny or grant and is not contingent upon the consent of the widow or next of kin. It does not appear that the appellant made any effort at any time to comply with the statute in reference to notice. It proceeded on the assumption that its right to an autopsy must be predicated upon the consent of the widow or an order of the Industrial Board and, six months after the death of Jones, it made an oral request of the appellee's counsel that consent be given to such autopsy and, upon the appellee's refusal, it filed a written petition for same with the Industrial Board. This delay is explained by the appellant on the theory that it knew nothing of the appellee's claim that her husband's death was due to an electric shock until April, 1944, after which it made its request and filed its petition at the first opportunity. The evidence most favorable to the appellee on that question, however, indicates that two weeks after her husband's death she spoke to one of the appellant's councilmen about getting compensation therefor. Appellant's request for an autopsy came five and one-half months thereafter. In the case of *McDermid* v. *Pearson Co., Inc.* (1939), 107 Ind. App. 96, 21 N. E. (2d) 80, a delay of two months in an effort to procure an autopsy was held to be a waiver of the right to one. In the present case the evidence most favorable to the appellee constrains us to hold that the appellant, by its failure for over five months, after learning of the appellee's claim, to assert its right to an autopsy in the manner provided by statute, constitutes a waiver thereof.

Award affirmed with the usual increase.

NOTE.—Reported in 58 N. E. (2d) 938.