MAGAZINE *v.* SHULL ET AL

[No. 17,358. Filed April 25, 1945. Rehearing Denied June 8, 1945. Transfer Denied July 19, 1945.]

80

*Everett E. Rasor,* of Warsaw, and *S. K. Frankenstein* and *James P. Murphy,* both of Fort Wayne, for appellant.

*Brubaker & Rockhill,* of Warsaw, for appellee.

CRUMPACKER, J.—On December 30, 1944, the Industrial Board of Indiana awarded compensation to the appellee Herbert Shull in the sum of $8.80 per week for a period of 500 weeks for loss of sight in both eyes resulting from an accidental injury suffered by said appellee and arising out of and in the course of his employment by the appellant. The appellee Yetta Magazine was joined as a defendant below but the finding and award of the Industrial Board acquits her of all liability in connection with the matters in controversy and she has been made an appellee herein solely because she is a party of record. This appeal in no manner challenges the award in respect to her and therefore, when we use the word appellee, we refer to Herbert Shull alone.

The Industrial Board is charged with making an award that is contrary to law and in support of such charge but one basic proposition is urged, to-wit: that said award is not sustained by sufficient evidence. As it is only in the event there is absolutely no substantial evidence to sustain some necessary fact upon which the award is based, that the award will be set aside for the reason here assigned, it becomes necessary for us to review the evidence briefly. *Seymour Woolen Mills* v. *Ward* (1935), 100 Ind. App. 108, 192 N. E. 892; *Clayton* v. *Universal Construction Co.* (1942), 110 Ind. App. 322, 38 N. E. (2d) 887.

On March 13, 1942, the appellee was in the employment of the appellant who was at that time a coal and junk dealer in Warsaw, Indiana. The appellee's principal work was on a coal truck but he did whatever there

was for him to do in the way of common labor in and about the appellant's business. On March 12, 1942, the appellant bought a load of cast iron, including some stripped automobile motors, from the Zimmer Wrecking Company of Warsaw and on the following day the appellee drove the appellant's truck to the place of business of said Zimmer Wrecking Company for the purpose of loading and hauling away the cast iron so purchased by the appellant. In loading the motor blocks one end of an I beam was placed on the ground and the other end on the truck bed and said motor blocks were skidded up the I beam into the truck. When injured the appellee was behind a motor block pushing it up the incline. It was raining, the ground was wet and, while so pushing, the appellee's foot slipped and the motor block slid back along the I beam whereby he was "jerked and doubled up" and suffered a sudden pain like a "hot knife" in the region of the stomach. He became cold and dizzy but after he had rested a few minutes the feeling passed off and he helped load another motor on the truck but again became cold and dizzy and was compelled to rest. He drove the truck back to the appellant's place of business, went into the office where he collapsed and became unconscious. After regaining consciousness he had two rectal hemorrhages. During the following week, although working some, he had recurrent spells of nausea, pain, dizziness and chill with occasional and short periods of unconsciousness. During the night of March 21, eight days after the accident, he had several hemorrhages, both oral and rectal, and the following day he was taken to the hospital where severe hemorrhages recurred almost immediately for which he was given blood transfusions and other treatment. On March 24, eleven days after the accident, he awakened totally and permanently blind, and an examination of

his eyes disclosed that he was suffering from bilateral optical atrophy. Up to this time the appellee had had no trouble with his eyes and his eyesight had always been good. For some time prior to the accident, however, he had been suffering from a stomach and digestive disorder of sufficient seriousness to cause frequent vomiting and upon one occasion had been informed by his family physician that he had incipient stomach ulcers. Dr. E. O. Alvis, a specialist in diseases and surgery of the eyes, testified: "It is known on good authority that one single hemorrhage or repeated hemorrhages may exsanguinate the retinas and thereby produce death of the retinas followed by optic atrophy. That condition is rare but there are cases reported of such a happening." In response to the question, "Would you say, doctor, that the result might have occurred in this case?" the witness replied, "Yes, it just easily could have happened."

The appellant first insists that the record evidence is totally devoid of proof of any causal connection between the accident complained of and the subsequent hemorrhages suffered by the appellee. His argument in support of this contention runs something like this: There is no evidence of external trauma and if the hemorrhages occurred they must have resulted from the "jerking and doubling up" experienced by the appellee at the time he slipped or because of the disease from which he was suffering at the time. Therefore, what caused the hemorrhages is a scientific fact capable of solution only through expert medical testimony. "This issue presented a field of scientific inquiry where expert medical testimony is required to furnish the answer. It could not possibly be within the knowledge of lay witnesses or members of the jury." *Drakulich* v. *Indus. Comm.* (1940), 137 Oh. 82, 27 N. E. (2d) 932. The

evidence given by Dr. Alvis is all the medical testimony there is favorable to the appellee and it is wholly silent as to the cause of the hemorrhages.

It is true that Dr. Alvis made no pretense of testifying that the accident caused the hemorrhages. His testimony is confined solely to the causal connection between such hemorrhages and the appellee's blindness and if the rule of evidence announced by the Ohio case, *supra*, and relied upon by appellant, were the rule in Indiana, we would be inclined to consider his position well taken. He has referred us to no such holding in this state and we have been unable to find any.

Evidence is that which tends to produce conviction in the mind as to the existence of a fact, *The Evansville, etc., Railroad Co.* v. *Cochran* (1858), 10 Ind. 560, and the existence of any fact relative to the issue may be proved. *Newell* v. *Downs* (1847), 8 Blackf. 523. There are many classes or kinds of evidence among which is the permissible deduction the trier of the facts may reasonably draw from other established facts before the court, which deduction is usually characterized, in the law of evidence, as an inference. If there be a rational connection between facts established by direct evidence and the ultimate fact inferred therefrom, we know of no rule of evidence in Indiana that disqualifies such inference simply because the subject thereof is a matter of scientific knowledge. Expert testimony concerning the subject might be entitled to greater weight than the inference, but the inference, nevertheless, if legitimate and reasonable, is competent evidence. In the case before us we have direct and positive evidence of an accident followed immediately by severe pain in the region of the stomach, dizziness and chill and, within a few hours, by unconsciousness and rectal hemorrhages. It seems

clear to us that a reasonable mind may very well infer a causal connection between the accident and the hemorrhages. In fact such an inference is difficult to escape. The evidence as a whole, taken in a light most unfavorable to the appellee, indicates nothing more than that his long standing stomach condition was accelerated by the accident to a stage causing disability. Even so he is entitled to compensation as this court has repeatedly held. In *The Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 10 N. E. (2d) 747, we stated: "The mere fact that the physical condition of an employee might make him more susceptible to the particular injury which resulted in his disability is no reason for holding that a disease or condition, rather than the accident, was the proximate cause of the injury upon which the allowance for disability is based." We quote to the same effect from *State* v. *Gageby* (1933), 95 Ind. App. 681, 688, 184 N. E. 190, as follows: "But even if it should be admitted that before the accident the employee in the instant case had a latent or chronic ailment that was excited by the accident which arose out of and in the course of his employment and such latent or chronic ailment thereby became accelerated and active, resulting in his death, this court would not disturb the finding of the board in respect thereto unless the evidence was of such a conclusive character as to force a contrary conclusion. Such and similar cases have many times been held to be compensable. See *Goshen Veneer Company* v. *Cozzi* (1931), 93 Ind. App. 160, 176 N. E. 634; *Utilities Coal Co. v. Heer* (1921), 76 Ind. App. 312, 132 N. E. 262; *Indianapolis Abattoir Company* v. *Coleman* (1917), 65 Ind App. 369, 117 N. E. 502; *In re Bowers et al.* (1917), 65 Ind. App. 128, 116 N. E. 842; *Fort Wayne Rolling Mill Corp.* v. *Buanno* (1919), 69 Ind. App. 464, 122 N. E. 362; *Republic Iron,*

*etc. Co.* v. *Markiowicz* (1921), 75 Ind. App. 57, 129 N. E. 710."

The appellant further contends that the award herein must fail because it depends entirely upon the testimony of Dr. Alvis to establish causal connection between the hemorrhages suffered by the appellee and his subsequent blindness and, because the doctor said blindness *could* result from hemorrhages, rather than *did* result or *probably* resulted therefrom, his testimony has no probative value. It is true that in many jurisdictions courts attach little evidentiary value to statements of medical experts which are doubtful and equivocal and hold that the evidence must establish a probability, not a mere possibility, of causal connection between an injury and disability. In this state, however, it is settled law that the opinions of medical experts using words such as "might," "could," "likely," "possible," "may have," etc., in testifying concerning the causal connection between accident and disability, if coupled with other credible evidence of a nonmedical character, is substantial evidence and sufficient to sustain an award. *Indiana Power, etc., Co.* v. *Miller* (1920), 73 Ind. App. 521, 127 N. E. 837; *J. H. Hardin Co.* v. *Crowe* (1924), 81 Ind. App. 513, 143 N. E. 710; *Bimel Spoke, etc., Co.* v. *Loper* (1917), 65 Ind. App. 479, 117 N. E. 527. In our opinion the chain of events in close sequence, such as the accident itself followed by pain, dizziness, chill and hemorrhages, at frequent intervals over a period of 11 days, together with the fact that the appellee previously had had good eyesight and no hemorrhages, is sufficient, under the rule above announced, to render Dr. Alvis' testimony substantial in character and of such probative value as the Industrial Board saw fit to give it.

As a third and final reason for his contention that the award herein is not supported by sufficient evidence the appellant says that the testimony of Dr. Alvis must be discarded in its entirety because it is based on a false hypothesis. It appears that the doctor's testimony is based on a physical examination of the appellee together with a history in which the appellee stated that the motor block in question slipped back and struck him over the stomach, whereas the undisputed facts disclose that he was not struck on any part of his body in any manner whatever.

We said in *Town of Newburgh* v. *Jones* (1945), 115 Ind. App. 320, 58 N. E. (2d) 938: "It is fundamental we think that the opinion of an expert in answer to a hypothetical question should be predicated on facts which the evidence in the case tends to prove and if such question assumes material facts of which there is no evidence, an opinion based thereon has no probative value." An opinion based in part on a physical examination of the injured person and in part on a history, given to the expert at the time of the examination, which assumes a *material* fact of which there is no evidence, is in the same category. In the present case, however, Dr. Alvis' testimony, as we have said heretofore, went only to the causal connection between the hemorrhages and the blindness and has nothing to do with the cause of such hemorrhages. Therefore, the cause of the hemorrhages is an immaterial fact as far as the doctor's testimony is concerned and, if falsely assumed, could in no way affect the probative value of such opinion.

The award of the Industrial Board is sustained with statutory increase.

NOTE.—Reported in 60 N. E. (2d) 611.