EUREKA CHEVROLET COMPANY *v.* FRANKLIN

[No. 18,759.  Filed June 19, 1955.  Rehearing denied February 16, 1956.  Transfer denied April 20, 1956.]

*Harold Wallick, William B. Weissel,* and *Slaymaker, Locke & Reynolds,* all of Indianapolis, for appellant.

*Paul B. Boyle,* of Sullivan, for appellee.

ROYSE, C. J.—Appellant concedes that the sole question presented by this appeal is whether there is substantial evidence to sustain the finding and award of the Full Industrial Board of Indiana, that as a result of an accidental injury admittedly arising out of and in the course of his employment appellee suffered the permanent loss of the sight of his right eye.

The record discloses the following facts: For some time prior to September 24, 1953, appellee was in the employ of appellant as a mechanic. In the afternoon of said date he was rebuilding springs on a truck and was putting on a "U" bolt three-fourths of an inch in diameter and about twenty-five inches long. In doing this work he also ran the spring saddle; he used

a ratchet; the saddle became hot on the bolt and when he put pressure on it a connecting piece of the bolt about the diameter of his thumb and about an inch long, broke out of the bolt and struck him in the right eye. It pained him severely and for some time he was dizzy from the pain. He reported to his foreman who could see nothing in the eye. That evening he consulted Dr. Tomak who gave him a palliative ointment and told him to return the next day. Before the accident he could see out of this eye. Afterwards, he could not. His vision was 20/20 when he was discharged from the army in 1946.

Dr. M. E. Tomak of Linton, Indiana was graduated from Indiana Medical University in 1939 and since has been engaged in the general practice of medicine at Linton. In his practice he has studied the makeup and treatment of the eyes and has had many occasions to treat peoples' eyes for injury. He is an examiner for the Civil Aeronautics Authority and as such examines the body, particularly the eyes. During the five years immediately preceding appellee's injury he had examined his eyes several times for his pilot's license. The last examination was in August, 1953. On each of these examinations appellee had a 20/20 vision in both eyes.

On September 24, 1953, appellee called on him for the injury to his eye. He gave substantially the same account as to how the accident occurred as hereinbefore set out. Because the light was so painful and because of the watering and tightness of the eye lids he could not examine the eye grounds. He gave him ointment and pain tablets and directed him to come back the next day. His condition the next day was about the same. He did on that occasion examine the eye grounds. He washed out some small scales and exudates from the right eye. He gave him more ointment and a hypo-

dermic to guard against infection. Three or four days later appellee told him he could not see out of this eye. He treated his eye and found his visual acuity to be 2300, possibly 2400. Dr. Tomak then sent him to Dr. Speas at Terre Haute. Dr. Speas reported to Dr. Tomak that appellee had chorioretinitis and that he did not know what caused it. He advised Dr. Tomak to have a tuberculin test made and if he was sensitive to it to desensitize him. He made the test which was negative. Dr. Speas told Dr. Tomak the vision in the right eye was gone. Dr. Tomak said the history and nature of the injury were such they could produce the condition found resulting in permanent blindness. He said that in his opinion appellee's blindness was the result of the traumatic blow suffered September 24, 1953. He said he could not agree with Dr. Speas' opinion as to the cause of appellee's blindness.

Dr. E. O. Alvis, an eye specialist who examined appellee on November 19, 1953, said, in his opinion the traumatic blow to the eye could not have caused his condition.

Dr. R. C. Speas, an eye specialist of Terre Haute who made a complete examination of appellee and diagnosed his trouble as chorioretinitis, said it is his opinion his condition was caused either by a focus infection or condition of a disease such as T. B. rather than some external trauma. He said the report of the tuberculin test he received from Dr. Tomak was positive; it was severely marked. Dr. Tomak denied this.

About July 15, 1954, appellee consulted Dr. Speas on a complaint of poor vision in his left eye. He had no injury to the left eye. Dr. Speas said he had developed a chorioretinitis in the left eye but not in the same area as that in the right eye. He said he did not know what caused it to develop in the left eye.

It is to be noted that appellee had no indication of loss of vision in the right eye before the accident.

In support of its contention that the testimony of Dr. Tomak is not entitled to consideration in sustaining the award of the Board, appellant cites as authority for its contention the case of *Staley* v. *Indianapolis Coal Company* (1935), 101 Ind. App. 335, 197 N. E. 713; *Miami Coal Company* v. *Luce* (1921), 76 Ind. App. 245, 131 N. E. 824.

In the Staley case, *supra,* in reversing an award of the Board denying appellant compensation, this court, speaking through Judge Curtis, said:

"The controlling facts surrounding the alleged accident and injury are simple and uncontroverted. Some seven years before the day in question the appellant suffered a rupture or hernia, but it was not serious or aggravated and did not disable him or prevent him doing his usual work. In the seven years he lost only about an hour and one-half on account of his hernia and that was occasioned by his being away from work to buy a truss. He was regular in his work. On August 1, 1934, which was the day in question he was assisting another workman in lifting a heavy can of cinders into a truck. Something then happened. His evidence was that he had the sensation of a pulling out on the sides of the truss followed immediately by sickness. He has never been able to work since due to aggravation and acceleration of his hernia. There is not a scintilla of evidence pointing otherwise than as above stated, unless it may be said that the answers of a doctor, called as a witness by the appellee, to certain questions calling for his opinion as to whether or not an injury to the appellant by accident occurred on the day in question is to be given effect. In view of all of the evidence and particularly the uncontroverted physical facts proven in the instant case, his opinion, which was based upon a part only of the facts proven by the evidence, would be entitled to no more consideration than the evidence of a witness who would testify that the multiplication table

is incorrect or that there is no law of gravity or that north is south."

In our opinion this case not only does not sustain appellant's contention, but on the contrary supports the position of appellee. The evidence rejected by this court in that case was purely opinion evidence based upon only a part of the facts. While here we have the evidence of the physician who treated appellee for this injury and had examined and treated him at various times for a period of about five years.

In the Miami Coal Company case, *supra,* two doctors who attended an autopsy testified that appellee's decedent died from causes independent of the injuries he received in an accident arising out of and in the course of his employment. One of the doctors had treated the decedent for his injuries. Another doctor, in answer to a hypothetical question, asserted the injury was the proximate cause of his death. In affirming the award of compensation this court said, at page 249:

> "The board would have been justified in rejecting entirely the opinions of Dr. Danner and Dr. Johnston and in relying on the opinion of Dr. White. But fortunately in this case the board was not limited to opinion evidence. It was the duty of the members of the board to bring to bear their experience and knowledge, and to exercise their reasoning powers. Indeed, if it were not for the saving grace of what we call common sense, justice would be defeated in almost every case where opinion evidence is admitted. Moreover, it is sufficient if there be a causal connection between the injury and death. The injury need not be the sole cause. It has often been held that if it be a concurring cause it is sufficient. On this question of fact the board reached a legitimate conclusion".

It seems to us this case is authority for us to sustain the award in this case.

In the case of *Indiana Power and Water Company* v. *Miller* (1920), 73 Ind. App. 521, 127 N. E. 837, the facts were strikingly analogous to those herein. There appellee, while working in appellant's coal mine, received an injury to his left eye. Following this injury he was not able to work for two or three weeks. He had the eye treated by eye specialists. His sight began to fail shortly after the injury, and in six or seven months thereafter he had completely lost the sight of both eyes. This court, in affirming an award for the loss of sight in both eyes, said:

> "There is no contention over the finding that appellee was injured in the course of his employment by being struck in the eye with a piece of coal or something. Appellant contends that there is no evidence that this injury caused appellee to lose his eyesight, but that the undisputed evidence shows that the blindness was caused by a constitutional disease. In support of this contention appellant insists that, in a case of this kind, the fact that the blindness was the result of the injury must be proved by the testimony of physicians; and that such fact cannot be proved by non-expert witnesses. It is not necessary for us to pass upon this contention, as Dr. Knapp in answering the first question asked by appellant on cross-examination testified that the condition of appellee's eyes, the atrophy of the optic nerves in both eyes, might have resulted from the injury suffered by appellee in February, 1917. This statement, when taken with the other evidence, is sufficient to support the award."

In *Magazine* v. *Shull et al.* (1945), 116 Ind. App. 79, 60 N. E. 2d 611 (Transfer denied), appellee was employed as a laborer and was at the time of the accident engaged in loading some motor blocks on appellant's truck. The court states the facts as follows:

> "When injured the appellee was behind a motor block pushing it up the incline. It was raining, the

ground was wet and, while so pushing the appellee's foot slipped and the motor block slid back along the I beam whereby he was 'jerked and doubled up' and suffered a sudden pain like a 'hot knife' in the region of the stomach. He became cold and dizzy but after he had rested a few minutes the feeling passed off and he helped load another motor on the truck but again became dizzy and was compelled to rest. He drove the truck back to appellant's place of business, went into the office where he collapsed and became unconscious. After regaining consciousness he had two rectal hemorrhages. During the following week, although working some, he had recurrent spells of nausea, pain, dizziness and chill with occasional and short periods of unconsciousness. During the night of March 21, eight days after the accident, he had several hemorrhages, both oral and rectal, and the following day he was taken to the hospital where severe hemorrhages recurred almost immediately for which he was given blood transfusions and other treatment. On March 24, eleven days after the accident, he awakened totally and permanently blind, and an examination of his eyes disclosed that he was suffering from bilateral optical atrophy. Up to this time the appellee had had no trouble with his eyes and his eyesight had always been good. For some time prior to the accident, however, he had been suffering from a stomach and digestive disorder of sufficient seriousness to cause frequent vomiting and upon one occasion had been informed by his family physician that he had incipient stomach ulcers."

In affirming the award of the Board, this court said, at p. 87:

"The appellant further contends that the award herein must fail because it depends entirely upon the testimony of Dr. Alvis to establish causal connection between the hemorrhages suffered by the appellee and his subsequent blindness and, because the doctor said blindness *could* result from hemorrhages, rather than *did* result or *probably* resulted therefrom, this testimony had no probative value. It is true that in many jurisdictions

courts attach little evidentiary value to statements of medical experts which are doubtful and equivocal and hold that the evidence must establish a probability, not a mere possibility, of causal connection between an injury and disability. In this state, however, it is settled law that the opinions of medical experts using words such as 'might', 'could', 'likely', 'possible', 'may have', etc., in testifying concerning the causal connection between accident and disability, if coupled with other credible evidence of a nonmedical character, is substantial evidence and sufficient to sustain an award. *Indiana Power etc. Co.* v. *Miller* (1920), 73 Ind. App. 521, 127 N. E. 837; *J. H. Hardin Co.* v. *Crowe* (1924), 81 Ind. App. 513, 143 N. E. 710; *Bimel Spoke, etc. Co.* v. *Loper* (1917), 65 Ind. App. 479, 117 N. E. 527. In our opinion the chain of events in close sequence, such as the accident itself followed by pain, dizziness, chill and hemorrhages, at frequent intervals over a period of 11 days, together with the fact that the appellee previously had had good eyesight and no hemorrhages, is sufficient, under the rule above announced, to render Dr. Alvis' testimony substantial in character and of such probative value as the Industrial Board saw fit to give it."

In the case of *Blackfoot Coal & Land Corporation* v. *Cooper* (1951), 121 Ind. App. 313, 95 N. E. 2d 639 (Transfer denied), the question before this court was whether the evidence was sufficient to sustain the finding of the Board that the accidental injury aggravated a pre-existing cancerous condition. Appellant in that case contended the evidence was insufficient to sustain the award for the reason the doctor testified that the accident "might have" or "could have" aggravated the cancer, but that he could not say it did. In affirming the award of the Board we quoted with approval the foregoing quotations from the Indiana Power and Water Company case, *supra,* and the Magazine case, *supra.* We then said:

"Medical science has not developed to the extent that it can diagnose human ailments with the exactitude of the mathematician. It does know that many ailments may be aggravated and their harmful or fatal end accelerated by trauma. Yet, in many such cases it cannot honestly and unequivocally say that the trauma was the sole cause of the result which occurred after the injury was sustained. This is particularly true with heart disease and aneurysms. In such cases the conscientious practitioner can only give his opinion that the accident 'may have', 'could have' or 'might have' aggravated or accelerated the progress of the disease. Hence, we are committed to the doctrine that where such evidence is supported by other facts, conditions or circumstances which would support a reasonable inference that an accidental injury caused an aggravation or acceleration of a pre-existing disease, there is sufficient evidence to sustain an award of compensation under the Indiana Workmen's Compensation Act."

Applying the authorities herein cited to this case, it seems clear to us that considering the evidence of Dr. Tomak together with the physical facts and the history of appellee's vision prior to the accident, there was ample evidence to sustain the finding and award of the Board.

Award affirmed.

NOTE.—Reported in 131 N. E. 2d 330.