CROWN PRODUCTS *v.* BRANDENBURG

[No. 18,693.   Filed October 6, 1955.   Rehearing denied
November 17, 1955.]

James Brandenburg, appellee, received a favorable award of compensation for an accidental injury and Crown Products Company, appellant, appeals.

*Murray, Mannon, Fairchild & Stewart, James L. Murray, Richard W. Guthrie,* all of Indianapolis, for appellant.

*Townsend & Townsend, Earl C. Townsend, Jr.,* and *John F. Townsend,* all of Indianapolis, for appellee.

KENDALL, P. J.—This is an appeal from an award of the Industrial Board in favor of appellee awarding compensation for an accidental injury.

The appellant contended before the Board that appellee's impairment was not the result of any accidental injury received while in the course of his employment.

Hearing Member made an award that appellee had a twenty-five (25%) permanent partial impairment to the man as a whole and awarded compensation at the rate of Thirty ($30.00) Dollars per week for one hundred and twenty-five (125) weeks, with attorney fees and costs. The Full Board affirmed the award of the Hearing Member, with the exception of one member.

Appellant's assignment of error is that the award of the Full Board is contrary to law and in support thereof charges that the award is not sustained by sufficient evidence. Since it is only in the event that there is no substantial evidence to sustain some necessary fact upon which the ward is based, that the award will be set

aside for the reason here assigned, it is necessary for us to review the evidence briefly.

It was stipulated that appellee was in the employ of appellant on February 6, 1954, on which date he received an injury as a result of the accident arising out of and in the course of his employment when a steel angle iron fell and hit him on the head causing lacerations.

After the accident, appellee walked to the first-aid room where the cut was cleaned and sutured and then returned to the plant. The evidence further reveals that he did not show evidence of unconsciousness or unsteadiness and worked the remainder of that working day, which was Saturday. On the following Monday, appellee returned to the shop and worked until Friday afternoon when he acted "like he was going to faint". On that evening he left for Kentucky for a visit, returning to Indianapolis the following Sunday; that on the trip to and from Kentucky appellee had "passing-out episodes", and, upon his return to Indianapolis, his family doctor was called who ordered him sent to the hospital where he remained until March 12, 1954. While in the hospital, he evidenced symptoms of nervous and mental troubles of various types. The family physician, Doctor Worley, testified that appellee was admitted to the hospital with a diagnosis of subdural hematoma; that the patient spoke slowly and with jerks, while before the accident complained of, he spoke rapidly and coherently; however, this was contradicted by certain members of the family. The doctor testified, in response to appellee's impairment, that, "At the present time, unless his brain improves, which I am almost sure it will not, he has about an 85% permanent disability". It was Dr. Worley's opinion that appellee had a cyst condition prevailing at the time but had he not sus-

tained the blow on the head, this cyst would have never broken and the brain surrounding the cyst would never have been permanently damaged as a result of the injury. There was evidence that the appellee had suffered polio during youth.

Dr. E. Rogers Smith testified in behalf of appellant that appellee's ex-rays showed a dilation of the ventricle and atrophy over the surface of the brain; that there was no displacement of the ventricle surroundings which indicated there was no hematoma present on one side or the other; that a hematoma is a blood clot nearly always caused by an accident and that neither the pneumoencephalogram nor the pressure reading of the spinal puncture or spinal fluid showed evidence of a hematoma; that the patient's mental condition fluctuated from day to day; that the appellee complained of headaches although a neural examination was negative and the cranial nerves indicated no imbalance and the same was true for the deep reflexes, motor power, sensation, coordination of the extremities; that there was no evidence that the blow on the head had broken a cyst, if there was one and caused a hemorrhage; that in his opinion, the appellee had no disability resulting from the injury when last seen, except there was a temporary concussion and that it was highly impossible that it injured the brain.

The testimony of appellee's physician relates to an eighty-five (85%) percent permanent disability of appellee, while the award of the Industrial Board is for a twenty-five (25%) percent permanent partial impairment. The testimony of appellant's doctor was to the effect that appellee had no permanent partial impairment as a result of the injury. It is upon this type of evidence, in view of the finding of the Board, that appellant argues that there is no evidence of probative value

of permanent partial impairment of appellee as a result of the injury received on February 6, 1954.

It is contended by appellant that there is a real distinction between the term, disability, and the term, impairment, and that such distinction must be kept in mind at all times in proceedings before the Industrial Board and strongly relies on the recent case of *Kenwood Erec. Co* v. *Cowsert* (1953), 124 Ind. App. 165, 115 N. E. 2d 507; *Northern Ind. Power Co.* v. *Hawkins* (1925), 82 Ind. App. 552, 146 N. E. 879. Considering the Kenwood case, *supra*, as a whole, we believe it is authority actually to sustain the award of the Board in this case. It is not so much a question whether appellee's physician used the word, disability, in his testifying, as it is whether or not the Industrial Board improperly construed the evidence in making their award that the appellee had a twenty-five (25%) percent permanent partial impairment. After Dr. Worley gave his testimony as to appellee's disability in response to a question regarding impairment, there was no motion to strike the answer from the record. At page 170 of 124 Ind. App. in the Kenwood case, *supra*, the court said:

> "However, on objection to the admission of the statement, the hearing member stated: 'It is quite apparent that the doctor meant impairment instead of disability.' We are, therefore, required to examine the complete statement of Dr. Vietzke to determine whether the Board improperly construed the above statement."

Doctor Worley had known the appellee for some two or three years. He had operated on him for appendicitis a short time before the accident complained of here. He considered appellee to be normal physically and mentally prior to the accident and when the doctor observed appellee after the accident on February 12,

appellee was incoherent in speech, reflexes were abnormal and he did not remember things that occurred two weeks prior thereto. Appellee had fainting spells, and, after being admitted to the hospital, did not regain consciousness for several days, whereupon he asked Doctor Fausset, a neuro-surgeon, to see the patient, who in turn asked Doctor Hetherington. At the time patient was admitted to the hospital he did not recognize members of his family, was in a stupor, which was typical of acute edema of the brain, which is a swelling of the brain. Dr. Worley was asked the following question: ". . . What, in your opinion, would be the percentage, if any, of permanent partial impairment to him as a whole man?" In answering the question, the doctor used the term, "disability", instead of "impairment". In view of the Board's finding of the impairment of a man as a whole and the testimony given by Dr. Worley, appellant now contends that there is no evidence to sustain the finding of the Board. Considering the history of the case as given to Dr. Worley, his knowledge of the appellee prior to the accident, the fact that he was interrogated as to the impairment of the appellee, it seems reasonable for the Board to have construed his testimony in rendering their award as relating to impairment and that Dr. Worley used the word, "disability", in its more common and generic usage with the intention that it relate only to the functional loss of appellee's body as described by the act as "impairment". *Kenwood* v. *Cowsert, supra.* In so construing, doubtless the Board believed the testimony of Dr. Worley wherein he stated that appellee's condition was that of a "post-concussion syndrome with post hemorrhage, atrophy of the brain, . . . damage to the point where his brain will not return to normal and this means the brain is permanently damaged." Neither can it be overlooked that in

testifying that the appellee's disability was eighty-five (85%) percent; that the doctor testified that the disability "will never change, so far as that is concerned or will change very little. . . ."

In the Kenwood case, *supra*, relied upon by appellant, the Hearing Member stated, "It is quite apparent that the doctor meant impairment instead of disability", while in the instant case, at the close of the evidence, the Hearing Member stated, "The Doctors we have medical testimony of eighty-five percent permanent partial impairment and nothing. . . ."

We recognize full well the distinction of the two words, impairment and disability. Disability as generally used means inability to work, while impairment refers to the loss of a function.

Evidence of appellee's condition before and after the accident was given by members of his family to the effect that before the accident in February, 1954, he was a normal person, excepting a speech defect; that he acted like anyone else; that after the accident he acted like he was in a fog, answered questions slowly, had headaches, would lie around, would forget what happened and had to be watched all of the time. Certainly the manner and extent to which a man can think, speak, remember and act clearly is material, and the Board had a right to consider the same in view of the medical testimony in determining the amount of impairment to the man as a whole.

From the testimony as related in this case, this court cannot say that Dr. Worley did not use the term, "disability," in its more common usage intending that it relate only to the functional loss of the appellee's body as described by the act of impairment. In fact, this case is stronger than that of the Kenwood case, *supra*.

We have examined the authorities cited by appellant and find that they are not comparable to the facts of this case.

It is well settled that the findings of a Reviewing Board are to be sustained whenever possible and they ▮▮ are not to be reversed unless they are lacking in evidential support or are tainted by an error of law. Our courts have held that evidence of disability may be properly admitted as tending to prove or disprove impairment of body function. *Miers* v. *Standard Forgings* (1946), 117 Ind. App. 89, 69 N. E. 2d 180.

We, therefore, conclude that the evidence before the Board and the inferences reasonably drawn therefrom are sufficient to support the award.

Award affirmed with statutory penalty of five (5%) percent.

## ON PETITION FOR REHEARING

KENDALL, P. J.—Appellant has filed an earnest and able brief on its Petition for Rehearing in which is sought a reconsideration of the questions decided adversely to its contentions.

In the Petition for Rehearing, appellant contends that this court erred in two particulars in its decision. First, in holding that Dr. Worley's testimony was of probative value since one of his answers was partially based upon a case history given him regarding the unconsciousness of appellee at the time of injury, which was not proven. Secondly, that the court erred in holding that the doctor, in testifying, meant "impairment" when in fact he used the word "disability" in describing appellee's injury. These contentions were briefed in appellant's brief and were argued and were considered by this court in making its decision.

Appellant strenuously argues that Dr. Worley's opinion had no probative value because it was partially based

upon the history obtained by him to the effect that the injury sustained by appellee caused him to be rendered unconscious at the time and that there was no evidence that unconsciousness occurred, and further that since there is no evidence in the record of unconsciousness, the award should not be sustained and that a rehearing be granted.

Appellant relies upon the following cases to substantiate his contention: *Hirst* v. *Chevrolet Muncie Division, etc.* (1941), 110 Ind. App. 22, 33 N. E. 2d 733; *Magazine* v. *Shull* (1945), 116 Ind. App. 79, 60 N. E. 2d 611; *Town of Newburgh* v. *Jones* (1945), 115 Ind. App. 320, 58 N. E. 2d 938. We recognize the rule of law announced in each of the above-cited cases to the effect that medical testimony opinions are of no probative value in themselves when based upon unknown or unproven assumed facts.

Appellant, however, fails to give consideration to all of the testimony of Dr Worley and fails to realize that the evidence in this case is most distinguishable from the facts cited in the cases which they rely upon. It cannot be overlooked that in describing the appellee's condition the doctor testified extensively that appellee had a post concussion syndrome with post hemorrhage, atrophy of the brain, which resulted in the swelling of the brain and edema thereof; that the brain was damaged to the point where it would not be normal and his brain was permanently damaged and that the doctor further testified that probably if appellant had never sustained the blow on the head, the cyst would never have been broken and the brain surrounding the cyst would have never been permanently damaged as a result of the injury. This testimony of the physician the Industrial Board had a right to and did believe, and, in our opinion, renders unimportant the case history

which the doctor referred to in regard to unconsciousness. Since the appellant strongly maintains that this court overlooked the doctor's testimony, we quote the pertinent portions of the evidence from the record.

". . . Q. Is the concussion caused from being hit with the iron bar?

"A. Yes, it caused him to lapse into a coma.

. . .

"Q. Now, as a question as to his condition today, you knew him prior to the accident and considering his condition as it is today, what in your opinion would be the per cent, if any, of permanent partial impairment to him as a whole man?

"A. Well, at the present time unless his brain improves, which I am almost sure it will not, he has about an 85% permanent disability. I doubt if this boy will ever be able to work again, on a full time job where there is any condition where he has any type of responsibility at anytime, because still the subject involved still has fainting spells and still has lapses of memory at times.

"Q. Doctor, describe his condition at the present time.

"A. His condition at the present time is post-concussion syndrome with post hemorrhage, atrophy of the brain, in other words in lay terms he has been hit on the head, has had an acute injury to the brain, brain swelling and edema of the brain, damaged to the point where his brain will not return to norman, and this man's brain is permanently damaged. Can I account for anything I am saying here?

"Q. Yes.

"A. This man in my opinion had a cyst condition, regardless of this condition prevailing at the time he was operated on, probably never sustained the blow I think the cyst would have never broken and the brain surrounding the cyst would have never been permanently damaged as a result of this injury. And as far as any mental deficiency is concerned, as I mentioned previously I had known the boy two or three years and his mental

condition was that of a normal boy who had the schooling he had had and the family background and environment of anyone in his walk of life and he has definitely changed since the accident. In my opinion the boy has an 85% permanent disability, which will never change, so far as that is concerned or will change very little, those are points. If he was a laborer on a farm or in any work have to be careful he didn't have a fainting spell where he might injure himself, at the present time his family said they have to be with him all time almost, as the fainting spells I think are more or less sudden, they don't know when he is going to have them.

"Q. Now Doctor can you state whether or not these conditions which you described were caused by the blow on the head by the iron bar?

"A. As I mentioned, I had the history of a previous congenital deformity and I think he had the accident, causing brain damage, the blow on the head. It is my opinion his present status, his mental, his physical and degree of mental disability is the result of this accident and no other result."

The evidence was uncontradicted that appellee was hit on the head with a pipe while working. We cannot overlook the answers given by the doctor to the questions regarding the present condition of appellee in the above questions and answers, which, in our opinion, makes this case distinguishable from cases cited.

In reference to the second contention which appellant maintained that the court erred in not following the opinion of this court, in the case of *Kenwood Erec. Co.* v. *Cowsert* (1953), 124 Ind. App. 165, 115 N. E. 2d 507, we re-affirm our position that upon a close study of the Kenwood case, *supra,* as compared to this case, that the Kenwood case, *supra,* does not substantiate appellant's position but does substantiate that of the appellee.

Dr. Worley had attended appellee for more than two or three years, had had an opportunity to observe him,

his personality and manner of conduct, the condition he was in when admitted to the hospital. When the doctor was interrogated, he was asked as to the "impairment" of appellee, and, in answer thereto, he described it in terms of "disability". In accordance with the Kenwood case, *supra*, it seems reasonable to this court for the board to have construed Dr. Worley's testimony in its more common and generic usage with the intention that it relate only to the functional loss of appellee's body as described by the act as impairment. From Dr. Worley's testimony, we cannot say, in view of the Kenwood case, *supra*, that Dr. Worley did not use the word "disability" in its more common usage and intended it to relate only to the functional loss of appellee's body.

We have carefully examined each of appellant's contentions and believe that they are not substantiated by the evidence and by prior holdings of this and the Supreme Court.

Petition for rehearing denied.

NOTE.—Reported in 129 N. E. 2d 134.

Rehearing denied 130 N. E. 2d 73.