**David C. KAMINSKI, Appellant (Defendant Below)**

v.

**Barbara COOPER, Appellee (Plaintiff Below)**

No. 56A03–8607–CV–205.

Court of Appeals of Indiana, Third District.

May 26, 1987.

Rehearing Denied July 9, 1987.

Jay A. Charon, (Kathleen M. Maicher, of counsel), Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for appellant.

Joel C. Levy, Singleton, Levy & Crist, Highland, for appellee.

HOFFMAN, Judge.

Defendant-appellant David Kaminski appeals a jury decision awarding $70,360.00 to plaintiff-appellee Barbara Cooper for her personal injuries sustained during an automobile accident. This action arose from an accident involving a car driven by Kaminski and a car driven by Cooper's husband, in which the Cooper family was riding. The Coopers instituted suit against Kaminski and sought recovery for physical injuries, attendant pain and suffering, permanent impairment, as well as lost wages, loss of consortium and medical expenses. On appeal, Kaminski does not question the jury's verdict regarding the other Cooper family members.

The evidence relevant to the appeal discloses that Cooper suffered a fragmented fracture of her right shoulder. The head of the humerus did not heal evenly, which caused a crepitation, or rubbing, in the joint. Dr. Ken Kuo performed surgery to remove a cyst that developed after the fracture healed. The cyst was packed with bone grafts from Cooper's pelvis. Cooper's post-operative x-rays revealed secondary arthritic changes in the shoulder joint. Further x-rays showed a slight lucency, a hollow cyst-like area, in the shoulder. Additionally, Cooper's injuries would result in permanent pain and discomfort in the joint.

Over Kaminski's objection, the deposition of Dr. Kuo was read to the jury. Dr. Kuo testified that certain medical complications could arise in the future. Dr. Kuo stated that a cyst could reoccur and that it was possible that Cooper would require a total joint replacement. Total joint replacement would hinge upon such factors as the progression of the arthritis and the pain.

On appeal Kaminski urges error in the trial court's decision to allow into evidence the deposition testimony concerning possible future medical conditions. The trial court instructed the jury that an award for future medical expenses must be based upon a finding that the expenses are reasonably certain to occur and that the possibility of future expenses is insufficient as a matter of law to support a verdict.

The question of admissibility of an expert witness' testimony based upon possibilities rather than probabilities or a reasonable certainty has been addressed by the Indiana Supreme Court. A rule of admissibility has evolved. When a proper foundation establishes the need for expert testimony and the expert's credentials establish an expertise in the area and the methods employed, the jury may then perform its function of assessing the reliability of the evidence.

In *Palace Bar, Inc. v. Fearnot, Admx.* (1978), 269 Ind. 405, 415, 381 N.E.2d 858, 864, the Court determined that a "doctor's testimony that a certain thing is possible is no evidence at all," in that the doctor's opinion based upon speculation is no more valid than the jury's speculation. On cross-examination the doctor agreed that there was "no way to know" whether prompt medical attention would have saved the decedent's life. *Palace Bar, supra,* 269 Ind. at 414, 381 N.E.2d at 864. The doctor did say that prompt aid to a heart patient could possibly save the person's life, but he was unable to testify with more certainty on the issue. *Palace Bar, supra.* No independent evidence regarding the effects of immediate medical attention was presented on the issue. Accordingly, the judgment for the plaintiff was reversed.

A few years later, the Court decided *Noblesville Casting Div. of TRW v. Prince* (1982), Ind., 438 N.E.2d 722, (Pivarnik, J., concurred in result with opinion in which Givan, C.J., concurred). In a plurality opinion, the Court rejected the notion that medical testimony must be premised on a "reasonable medical certainty," the rule which emerged from *Palace Bar.* The Court turned to an assessment of the need for expert witness testimony, and an assessment of the witness' credentials and the reliability of the expert's methods. *Noblesville Casting, supra,* 438 N.E.2d at 727. Once a proper foundation for the testimony has been established, no threshold level of certainty should be required when determining the admissibility of evidence. *Noblesville Casting, supra,* 438 N.E.2d at 731.

The Court stated:

"It is readily apparent that an attempt to quantify degrees of certitude in terms such as those employed by witnesses does, to some extent, inject semantics into the matter of expert opinion testimony. The various phrases and words do not, in and of themselves, connote exact degrees of certainty or conclusiveness; usage of any particular term by an expert witness, as a consequence, may turn on the manner in which a question is propounded or the witness's subjective assessment of the meaning of the phrase or word used to express the opinion. *See, e.g., State v. Austin,* (1976) 52 Ohio App.2d 59, 368 N.E.2d 59 (expert testified that he regarded 'reasonable medical certainty' as up in the 'ninety-nine point nine percentage range').

At the same time, to hinge the question whether an expert's opinion is admissible and probative on the willingness and ability to say that such-and-such is 'reasonably certain,' as opposed to 'probable' or 'possible,' is to impose on the expert a question which elevates the law's demand for certainty in language over the state of the particular art and the value of the advances made therein. Medicine, for instance, is not yet an exact science; to demand reasonable certainty in medical opinions places a sometimes insur-

mountable barrier in the face of the candid and straightforward medical expert." *Noblesville Casting, supra,* 438 N.E.2d at 727.

The Court noted that the demand for "reasonable certainty" was designed to guarantee trustworthiness. However, assessing credibility and reliability is a function of the jury and should not affect admissibility. *Noblesville Casting, supra,* 438 N.E.2d at 729.

Yet, the Court in *Noblesville Casting* reaffirmed its decision in *Palace Bar* on the issue of such evidence as the sole basis for a verdict. The Court determined that, "Notwithstanding the probative value and admissibility of an expert's opinion which falls short of 'reasonable scientific or medical certainty,' we also reiterate that standing alone, an opinion which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. Indeed, that was the focus of *Palace Bar, Inc. v. Fearnot, supra;* the rule is well established in this jurisdiction, as well as in others. *See, e.g., Dayton Walther Corp. v. Caldwell,* (1980) [273] Ind. [191], 402 N.E.2d 1252; *Herman v. Ferrell, supra; Beaman v. Hedrick,* (1970) 146 Ind.App. 404, 255 N.E.2d 828; *Magazine v. Shull, supra,* [116 Ind.App. 79, 60 N.E.2d 611]; *see also, Boose v. Digate, supra* [107 Ill. App.2d 418, 246 N.E.2d 50] [Ill.]; *Carpenter v. Nelson, supra* [257 Minn. 424, 101 N.W.2d 918] [Minn.]; *Hayzlett v. Westraco Chlorine Products Corp.,* (1943) 125 W.Va. 611, 25 S.E.2d 759. The rule is simply a counterpart to the standard and burden of proof; it reflects respect for such concomitant propositions that civil liability or an award of damages may not be predicated purely on speculation (*G.B. v. S.J.H.,* [1975] 167 Ind.App. 175, 338 N.E.2d 315) or that criminal liability should not attach where purely circumstantial evidence points to conflicting inferences of guilt and innocence. *Spears v. State,* (1980) [272] Ind. [634], 401 N.E.2d 331." *Noblesville Casting, supra,* 438 N.E.2d at 731.

Thus, the Court concluded that evidence based upon less than reasonable certainty can sustain a verdict when coupled with other evidence on the question to be proved. 438 N.E.2d at 731.

Although reluctant to endorse the acceptance of possibilities as probative evidence, Justice Pivarnik's concurring opinion in *Noblesville Casting* noted that although the doctor's expert testimony was expressed in "possibilities," it connoted more. Additionally, Justice Pivarnik agreed that other facts and circumstances in the case supported a finding for the claimant. 438 N.E.2d at 738.

In both *Heald v. State* (1986), Ind., 492 N.E.2d 671, 678–679, and *Church v. State* (1984), Ind., 471 N.E.2d 306, 309, the Supreme Court noted that an expert witness is not required to testify with absolute certainty as to his opinions.

Turning to the present case, the expert medical testimony concerning possible future medical complications and expenses which was presented through Dr. Kuo's deposition was admissible. Further, other more concrete evidence was presented to help support the verdict. The evidence demonstrated that a slight lucency existed in the joint after the operation, that secondary osteoarthritis had developed, and that Cooper would suffer permanent pain in the joint. From these certainties Dr. Kuo was able to testify regarding the necessity for a total joint replacement in the future. The evidence met the requirements set out in *Noblesville Casting, supra.*

The admissibility of the evidence disposes of other tangential issues raised by Kaminski. The judgment is affirmed.

Affirmed.

STATON and NEAL, JJ., concur.