## LONG, EXECUTOR *v.* NEAL ET AL.

[No. 23,414.   Filed October 5, 1921.]

1. WILLS.—*Action to Contest.—Defenses.—Estoppel.*—In an action to contest the validity of a will, the fact that two of the plaintiffs were estopped to maintain an action by having accepted the legacies under the provisions of the will and retained them, was no defense against others who joined them in bringing the action.  p. 120.

2. PLEADINGS.— *Exception to Ruling Sustaining Demurrer to Answer.—Waiver.—Filing Amended Answer.*—In an action to contest the validity of a will, after a demurrer had been sustained to a second paragraph of answer, pleading the acts of two of the plaintiffs as a bar to the entire action, a so-called "third paragraph" was filed pleading the same facts as had been pleaded in the second paragraph, but was addressed only to the complaint by one of the plaintiffs, *held* that such third paragraph constituted an amended answer and that the filing of it amounted to a waiver of the exception to the ruling on the demurrer.  p. 120.

3. WILLS.—*Contest.—Undue Influence.—Evidence.—Sufficiency.— Jury Questions.*—In a will contest evidence that a son, with whom the testatrix stayed at nights for seven or eight years, received a greater portion of the estate than the other children, *held* insufficient for submission to the jury the question of undue influence over the testatrix.  p. 120.

4. WILLS.— *Validity. — Evidence. — Competency. — Mental Unsoundness.—Undue Influence.*—In a contest of a mother's will, testimony that a son, who had received a greater portion of the estate than the other children, and with whom the testatrix stayed at nights for seven or eight years, had used a ouiji board in directing the affairs of the testatrix, telling her what it said should be done, and that he and his wife kept guard over the testatrix to prevent her from talking to her other sons and daughters, *held* competent on the issue of unsoundness of mind, but incompetent to afford a basis for a finding of undue influence.  p. 121.

5. WILLS.—*Contest.—Evidence.—Competency.—Undue Influence.*—Testimony by the plaintiffs in an action to contest their

mother's will, and by the husbands and wives of such plaintiffs, was competent on the issue of unsoundness of mind, but not on the issue of alleged undue influence exerted to procure the execution of the will.   p. 121.

6.  WILLS.—*Contest.*—*Trial.*—*Instructions.*—*Applicability to Evidence.*—In an action to contest a will, where there is no competent evidence to support a charge of undue influence, but there was evidence of unsoundness of mind, which might be understood as tending to show undue influence, it was error to give instructions submitting the issue of undue influence to the jury, the court should have withdrawn that issue from consideration by the jury.   p. 122.

7.  TRIAL.—*Instructions.*—*Province of Jury.*—*Natural Objects of Testator's Bounty.*—In a will contest, it was error for the court to instruct the jury that the children of the testatrix and their descendants are the natural objects of her bounty, and a disinheritance of children or their descendants, or an unnatural disposition of property with reference to them, is a part of the evidence which the jury have a right to consider on the question of testamentary capacity, since such instruction invaded the province of the jury.   p. 125.

From Morgan Circuit Court; *Nathan A. Whitaker,* Judge.

Action by Harvey S. Neal and others against George W. Long, executor.   From a judgment for plaintiffs, the defendant appeals.   *Reversed.*

*George W. Long, Anderson Percefield* and *S. C. Kivett,* for appellant.

*James B. Wilson* and *A. M. Bain,* for appellees.

EWBANK, J.—Appellees filed a complaint to contest the will of appellant's decedent, Sarah A. Neal, for the alleged reasons that (1) she was of unsound mind; (2) that execution of the will was procured by undue influence; and (3) that it was unduly executed.   Appellant answered by a denial, and by a second paragraph addressed to the complaint as a whole, alleging that two of the six plaintiffs (appellees) had each accepted a legacy paid to them under the provisions of the will and retained the same.

If all the plaintiffs had thus estopped themselves to contest the will, an answer setting up that fact might have withstood a demurrer. *Hight* v. *Carr* (1916), 185 Ind. 39, 45, 112 N. E. 881, 883; *Keys* v. *Wright* (1901), 156 Ind. 521, 60 N. E. 309. But the acts of one plaintiff which would estop him from contesting the will of an ancestor, are no defense against others who joined him in bringing the suit. *Floyd* v. *Floyd* (1883), 90 Ind. 130, 134; *Beach* v. *Prebster* (1872), 39 Ind. 492.

1.

Moreover, the record discloses that two weeks after the demurrer had been sustained to appellant's second paragraph of answer, he filed another paragraph addressed only to the complaint by one of the plaintiffs, pleading the same facts in defense of the suit by that plaintiff which had been pleaded in the second paragraph as a bar to the entire action. This constituted an amended answer, notwithstanding it was called a "third paragraph," and filing it amounted to a waiver of the exception on which appellant relies. *Western Union Tel. Co.* v. *Burris* (1921), 190 Ind. 654, 131 N. E. 521; *Humphry* v. *City Nat. Bank* (1921), 190 Ind. 292, 130 N. E. 273 and authorities cited.

2.

Appellant duly filed a motion for a new trial by which he challenged the giving of certain instructions and the refusal to give certain others. This motion was overruled and appellant excepted, and has assigned the ruling as error.

3.

The first instruction asked and refused was to the effect that there was not sufficient evidence to sustain the charge that the execution of the will was procured by undue influence. Of the instructions given, one (No. 9) requested by appellees and three (Nos. 12, 13, 14) prepared by the court told the jury what would constitute undue influence, and submitted to the jury the question whether the testatrix was influenced by false

statements, importunities, restraint, threats or coercion which controlled and influenced her to act contrary to her own wishes and desires in making the will in question.

Appellant's brief purports to set out the evidence, but sets out none whatever that even remotely tends to establish undue influence. Appellees' brief supplements this recital of the evidence, but does not set out competent evidence bearing on that subject. Appellees say only that "legatees of almost the entire estate, a travelling doctor and one Baker, who says he signed the alleged will at the request of the doctor, were the only ones around a sick, dying, insane woman when it is claimed she signed the alleged will." But the testatrix sat up in bed to sign the will, and did not die until more than ten weeks after the will was dated. Baker owned an adjoining farm bought by his father; he gave no such testimony as is suggested; and the doctor had lived in Helmsburg two years at the time of the trial. We fail to see how an inference of undue influence could arise from these facts.

A careful reading of the entire bill of exceptions discloses that there was no evidence of undue influence given by any witness competent to testify on the subject, but that, over an objection to the plaintiffs' competency for that purpose and under an express ruling by the court that they could only testify to the unsoundness of mind of the testatrix, one of the plaintiffs (an appellee) testified that Oliver Neal, the son to whom a larger share of the estate was devised, used a "wiji" (ouiji) board in directing the affairs of testatrix, telling her what it said should be done. It was shown that for several years before her death the testatrix and Oliver lived near each other, and part of the time she lived in his home; that her home was across the road from his and that a member of his family al-

ways stayed with her at night, or she spent the nights at his home for seven or eight years before her death. And several of the plaintiffs and the husbands and wives of several of them testified to facts tending to show that Oliver and his wife kept guard over the testatrix to prevent her from talking to her other sons and daughters, and exercised an influence over her actions whenever either was where she could see them. The court properly ruled that such evidence given by the contestors and by husbands and wives of contestors, was only competent on the issue of unsoundness of mind; and, under the circumstances of its admission for that sole purpose, it did not afford any basis for a finding of undue influence. §§499, 501 R. S. 1881, §§522, 525 Burns 1914; *McDonald* v. *McDonald* (1895), 142 Ind. 55, 87, 41 N. E. 336; *Wiley* v. *Gordon* (1914), 181 Ind. 252, 259, 104 N. E. 500.

In an action to contest a will, where there is no competent evidence to support the charge of undue influence, it is error to give instructions submitting that issue to the jury. *Blough* v. *Parry* (1896), 144 Ind. 463, 469, 470, 40 N. E. 70, 43 N. E. 560. Where evidence of unsoundness of mind was before the jury which was not competent to prove undue influence, but might be understood as tending to show that undue influence was exercised, the proper course would be to withdraw the issue of undue influence from consideration by the jury. *Stevens* v. *Leonard, Exr.* (1900), 154 Ind. 67, 72, 75, 56 N. E. 27, 77 Am. St. 446; *Young* v. *Montgomery* (1903), 161 Ind. 68, 69, 70, 67 N. E. 684; *Barricklow* v. *Stewart* (1904), 163 Ind. 438, 443, 444, 72 N. E. 128.

The will was dated May 11, 1915, and both the subscribing witnesses testified that it was signed and witnessed on that day. There was undisputed evidence that the testatrix died on July 26, 1915; that she was

in Nebraska when her husband died, and remained there two years; that she then owned about 125 to 130 acres of land in Brown county; that before her husband's death she had joined him in conveying a tract of about fifty-four acres, which was all that he owned, to her daughter, Mrs. Nettie Gillespie; that she returned to Brown county, Indiana, with her son, Oliver Neal, and his wife and two stepchildren in the fall of 1909; that her farm was then rented and she did not get possession until a year later; that she conveyed about forty acres to Oliver, on which he built a house across the road from her home; that they lived near each other in said homes until her last illness in the summer of 1915; that the last three years he farmed her land, giving her a share of the crops; that either Oliver's stepson or his stepdaughter slept at her home each night or, if both were away, she slept at Oliver's home during those years; that she still owned thirty to fifty acres of land west of the Helmsburg road, on which was a dwelling house, barn and two cisterns, and between fifty and sixty acres (probably fifty-seven), separated from it by a road, together with personal property worth $130. There was also evidence that her house was forty years old, that the barn frame was of poles, and that the tract on which they stood was not worth more than $600 as farm land, though other witnesses said it was worth $1,300 to $3,000 as sites for summer homes; that the 57-acre tract was worth $1,700, though witnesses fixed its value as low as $850; that in the tract where the house was there were only two to four acres of land that could be plowed and the rest was steep, broken and covered with small trees and had no rental value, while half of the other tract was plowed and produced crops. Witnesses testified that what had previously been conveyed to Oliver was worth about the same price per acre as what the testatrix still had. The will devised to Oliver and his

wife the 30-acre tract, with the house and barn, on condition that they should "care for and board, clothe and medicate" her, pay her funeral expenses, and pay two of the other sons $100 each; it bequeathed one dollar to the daughter who had received a deed for the father's real estate, and recited that the testatrix had theretofore deeded her "some fifty acres," and directed that the children should divide the family pictures; the residue of the real and personal property was ordered sold, and divided among the other three sons and two daughters, after payment of debts and funeral expenses.

There was evidence that one of her daughters lived within five miles of her, and had a horse and buggy, but had called upon her or spoken to her only once in the six years preceding her death; that the husband of this daughter had managed her farm two or three years while she was in Nebraska, and had spent most of the rents for fencing and other improvements, and she was dissatisfied because he did not send her more money; that a son lived two miles from her home the last four years, and saw her about once a month, and that after being at his home a few days not long before she died she went to board in the village where he lived, and he did not go to see her where she boarded, because he was not on good terms with the woman who kept the boarding house; that one of her sons who had lived in Nebraska with her went away from their home, and when he returned three weeks later she had come to Indiana; that her youngest son, who lived in Nebraska, had repeatedly refused to come back to live with her in Indiana when she wrote asking him to do so; and that the other daughter was married and lived in Nebraska from the time the testatrix came back to Indiana until her death.

A sister of testatrix who lived in Iowa, and who visited her two days and a night about three years before

her death, being the only time she saw the testatrix in ten years before her death, and three of the plaintiffs and the husband of one of them and the wives of the other two, testified to many acts and statements of the testatrix and to the opinion that she was of unsound mind. There was also evidence explaining some of the facts above referred to and denying others. Both defendants to whom the 30-acre tract was devised and the boy of twenty and the girl of eighteen, who had stayed at her home at nights, nine neighbors who lived near her and the physician, testified to facts on which each expressed the opinion that the testatrix was of sound mind, and offered explanations of the facts on which plaintiff's witnesses based their respective opinions that she was of unsound mind. As applied to this evidence the court gave the following instruction: "The law recognizes the children of a parent and their descendents as natural objects of the bounty of the parent, and a disinheritance of any of such children or their descendants, or an unnatural disposition of property with reference to them, if shown, is a part of the evidence in a cause which the jury have a right to consider on the question of testamentary capacity."

This was an invasion of the province of the jury. *Breadheft* v. *Cleveland* (1915), 184 Ind. 130, 108 N. E. 5, 110 N. E. 662; *Jackson* v. *Folsom* (1918), 187 Ind. 257, 118 N. E. 955. It might not be improper for a court, in discussing the admissibility of evidence that a child was disinherited in whole or in part without apparent cause, or in passing on the sufficiency of evidence to support a verdict setting aside a will, to use language similar to what was used in this instruction. But not every statement used in argument is proper to read to the jury as an instruction. And the question whether all the children bore such a relation to the testatrix at

the time of her death, with regard to their needs, their merits, the advancements each had received, and the love that the testatrix bore toward them, that all were equally the natural objects of her bounty, and whether disinheriting one of them and making an unequal distribution of the estate among the others was an unnatural disposition of the property, were questions of fact and not of law. It is possible that an invasion of the province of the jury by declaring as matter of law what ordinarily or frequently is true as matter of fact may not be reversible error. It may sometimes be obvious that the complaining party was not harmed. *Seaman* v. *Husband* (1917), 256 Pa. 571, 100 Atl. 941. But where the testatrix had joined her husband, in his lifetime, in conveying all his real estate—fifty-four acres—to the daughter that was "disinherited," and the will mentioned that fact, and the preference of a son over the other children amounted only to a few hundred dollars, at most, and the son who was thus preferred had lived near the testatrix the last six years of her life, and nightly had furnished a member of his family to sleep at her home, and the will charged him with her care and the expenses of medical attention for her through life and with her funeral expenses, we cannot know that the declaration, as matter of law, that all of her children were the natural objects of her bounty, so that her failure to distribute her property by will as the law would have distributed it if there had been no will, could be considered as evidence bearing on the question of testamentary capacity, exerted no improper influence.

The judgment is reversed, with directions to grant a new trial.

Myers, J., absent.