Louise LEE, Plaintiff–Appellant,

v.

Linda L. SCHROEDER, as Co–Executrix of the Estate of Raymond C. Schwagmeier, deceased; Gaberella Parker, as Co–Executrix of the Estate of Raymond C. Schwagmeier, deceased; Linda L. Schroeder, Richard P. Schroeder, Robert Schwagmeier, Ruth Weber, and Richard Shaddy, Defendants–Appellees.

No. 24A01–8803–CV–94.

Court of Appeals of Indiana, First District.

Oct. 17, 1988.

Rehearing Denied Dec. 14, 1988.

**350**

L. Mark Bailey, Wilson & Kehoe, Indianapolis, for plaintiff-appellant.

Gary K. Kemper, Jenner & Kemper, Madison, for defendants-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Louise Lee (Louise), appeals an adverse summary judgment rendered by the Franklin Circuit Court in her suit to contest the will of Raymond C. Schwagmeier, deceased, (the decedent). The defendant-appellees in the case are Linda L. Schroeder (Linda) and Gaberella Parker (Gaberella) as co-executors, and Linda L. Schroeder, Richard P. Schroeder, Robert Schwagmeier, Ruth Weber, and Richard Shoddy, individually.

We affirm.

## STATEMENT OF THE RECORD

The evidentiary material before the court is as follows. The decedent died on April 2, 1986, without a wife, children, or lineal descendants surviving him. He left as his heirs at law Louise and Ruth Weber, sisters, and Robert Schwagmeier and Richard Shoddy, nephews. An instrument purporting to be his last will and testament and bearing the date of January 31, 1986, was admitted to probate on April 11, 1986, after which letters testamentary naming Linda

and Gaberella as co-executrices were issued. By its terms, the will, after directing that all debts be paid, left all of the decedent's property to Linda. Thereafter, Louise commenced her action to contest the will on July 25, 1986, upon the following grounds: (a) unsoundness of mind; (b) undue influence; (c) duress; (d) fraud in obtaining the execution; and (e) execution of the will was obtained through undue influence.

The co-executrices and Richard Schroeder filed their motion for summary judgment supported by answers to interrogatories, the affidavits of hospital personnel, Kathy Scroggins, Patricia Alcorn, Shiela Adams, and Susan Kooistra, the affidavit of Dr. F.W. Hare, the decedent's treating physician, and the affidavits of Linda and Gaberella. All of the supporting evidentiary material, as relevant here, stated that at the period surrounding the execution of the will the decedent was alert, oriented, lucid, totally capable of understanding, of sound mind, and had good judgment. The affidavits of Linda and Gaberella added that he knew and understood the nature of his property, the natural objects of his bounty, the consequences of his act, and was not under undue influence, duress, coercion, or fraud when he executed his will. The answers to interrogatories reflected that Linda was not related to the decedent, but had been a friend since 1945. She had taken care of him prior to his death for a short time and stated that the decedent had no mental infirmaties. The will had been executed in a lawyer's office but she had not been present.

In opposition to the motion for summary judgment, Louise filed a counteraffidavit of her own, the affidavit of Dr. James R. Davis (Dr. Davis), a psychiatrist, and an affidavit of a minister.

Louise's affidavit stated that the decedent had been a patient in the hospital from January 11, 1986, to January 25, 1986, after he had suffered a heart attack. His wife of over 50 years died on January 27 and was buried on January 29, after which his will was executed on January 31, 1986. There was no prior will. Louise stated that she had spoken with the decedent on January 31 at which time he appeared to be in a very weak physical and mental condition, cried over the loss of his wife, and expressed fear about death and loneliness. He stated that Linda and her husband, Richard, had promised to terminate their employment in Florida and move to the Schwagmeier farm in Ripley County and begin farming. He told Louise that based upon those promises and in order to buy peace of mind and avoid a confrontation between the family and Linda, he gave Linda and Richard the farm in exchange for their promise of constant care, company, and companionship until his death. At no time did he mention he had executed a will on January 31, 1986.

Louise continued that on March 10, 1986, Linda had gone to Florida, leaving the decedent unattended in his home where he fell and was injured. The decedent was admitted to a hospital where he subsequently died on April 2, 1986. In her opinion the execution of the will was accomplished upon the exertion of undue influence over the decedent by Linda and Richard. Louise asserted further that it had been the decedent's wish that she be his administratrix and that he had promised that additional sums of money would be coming to her on his death. Louise also stated that Linda represented to others that she was the decedent's daughter.

The minister's affidavit spoke only of the decedent's poor health, of Linda's domineering and possessive attitude, and of the fact that the decedent and his wife had been reclusive and isolated. In his affidavit, Dr. Davis stated that he had examined hospital records which showed that the decedent was admitted to the hospital on January 11, 1986, for acute myocardial infarction. The affidavit, after reciting various entries from the hospital records addressed to the decedent's physical condition, stated that the records showed that the decedent was confused on January 13, 15, 20, 21, and 22. Nevertheless, the decedent was discharged on January 25. The hospital records were not certified by the hospital personnel, nor were they attached to the

affidavit. Dr. Davis concluded his affidavit with the following opinion:

It is my professional opinion, based upon Raymond Schwagmeier's age, his physical condition, including the degenerative hip disease, recent history of acute myocardial infarction, arteriosclerosis which is commonly known as hardening of the arteries or senility when associated with old age, his isolation at his home in the country, the emotional distress he was experiencing due to the death of his wife of over fifty years on January 27, 1986, the recognition of his own mortality when faced with his wife's burial and funeral on January 29, 1986, and the dissension between family and friends, that there was an environment on January 31, 1986, which rendered Raymond Schwagmeier susceptible to undue influence.

*Record* at 110.

The trial court granted the motion for summary judgment without specifying his reasons.

### ISSUES

Louise presents five issues for review which we restate as follows:

  I. Whether the dead man's statute, IND.CODE 34-1-14-6, is applicable to a will contest.

 II. Whether the evidence of fraud is sufficient to defeat the motion for summary judgment.

III. Whether a medical expert can testify based upon a decedent's medical records when he had no involvement in the case, had never seen the decedent, and the records had not been certified for evidentiary purposes.

### DISCUSSION AND DECISION

#### Standard of Review

In summary judgment proceedings a summary judgment is appropriate only where there is no genuine issue of material fact, and any doubt in this regard must be resolved in favor of the non-moving party. However, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute regarding facts which are dispositive of the matter. *Mogan v. Southern Indiana Bank and Trust Co.* (1985), Ind.App., 473 N.E.2d 158.

Affidavits in support of or in opposition to motions for summary judgment must be made upon the personal knowledge of the affiant and show he is competent to testify as to the matter included. The affidavit must set forth facts which would be admissible in evidence, and the assertions or conclusions of law or opinions by one not qualified to testify to such will not suffice. *Raymundo v. Hammond Clinic Ass'n.* (1983), Ind., 449 N.E.2d 276; Ind.Rules of Procedure, Trial Rule 56(E). Where the affidavit does not meet the requirement of T.R. 56(E), the court may disregard it upon its own motion. *Cunningham v. Associates Capital Services Corp.* (1981), Ind.App., 421 N.E.2d 681. A court should disregard any inadmissible information contained in an affidavit. *Interstate Auction, Inc. v. Central National Insurance Group, Inc.* (1983), Ind.App., 448 N.E.2d 1094.

The burden is upon the moving party to establish that no genuine issue of material fact exists. *Indiana Insurance Co. v. Sentry Insurance Co.* (1982), Ind.App., 437 N.E.2d 1381. However, if the moving party supports the motion with proper evidentiary materials which establish the lack of any genuine issue of material fact, the non-moving party may not rest on his pleadings but must come forth with proper evidentiary material showing specific facts as to why a genuine issue of fact exists for trial. *Cunningham, supra.* In *Garrett v. City of Bloomington* (1985), Ind.App., 478 N.E.2d 89, *trans. denied,* we said:

Our standard of review is the same as the trial court's—we must determine whether a genuine issue of material fact existed and whether the moving party is entitled to judgment as a matter of law. *Johnson v. Padilla* (1982), Ind.App., 433 N.E.2d 393. "A fact is material if it is decisive of either the action or a relevant secondary issue." *Consolidated City of*

*Indianapolis v. Cutshaw* (1983), Ind. App., 443 N.E.2d 853, 856. A summary judgment proceeding cannot and should not be used as an abbreviated trial. *Cutshaw, supra.* The trial judge may not weigh the evidence in such a proceeding. In reviewing the propriety of a summary judgment, the facts alleged by the party opposing the Motion must be taken as true. *Boswell v. Lyon* (1980), Ind.App., 401 N.E.2d 735.

478 N.E.2d at 92.

ISSUE I: *Dead Man's Statute*

■ The issue before us is whether Louise's counteraffidavit may be considered for any purpose in the summary judgment proceedings because of the proscription of IND.CODE 34-1-14-6, the dead man's statute, which reads in part as follows:

> In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate.

It has been held numerous times that IND.CODE 34-1-14-6 applies to will contests. In *Bechert v. Lehe* (1974), 161 Ind. App. 454, 316 N.E.2d 394, this court stated:

> The general tenor of the evidence sought was that during the decedent's lifetime she was on friendly terms with her brother; the brother did the actual farming of decedent's land along with his own; on occasion shortly before decedent's death the sister went to decedent's house to visit her; and on one occasion after decedent was required by her illness to leave her home, the sister went to the house to get some of decedent's personal effects.
>
> IC 1971, 34-1-14-7 (Burns Code Ed.) prohibits a party from being a competent witness as to any matter which occurred during the lifetime of the ancestor in all suits by or against heirs or devisees founded on a contract with or demand against the ancestor. IC 1971, 34-1-14-9 places the same disability upon the spouse of a party.
>
> It is well established that these statutes apply to will contests. *Emry v. Beaver* (1922), 192 Ind. 471, 137 N.E. 55; *Long v. Neal* (1921), 191 Ind. 118, 132 N.E. 252; *Wiseman v. Wiseman* (1880), 73 Ind. 112.
>
> While an exception exists regarding testimony of a testator's soundness of mind, the exception has been limited to that issue. *Lamb v. Lamb* (1885), 105 Ind. 456, 5 N.E. 171; *Burkhart v. Gladish* (1889), 123 Ind. 337, 24 N.E. 118 (exception stated); *Mitchell v. Walton* (1922), 192 Ind. 193, 133 N.E. 496; *Kennedy v. Kennedy* (1922), 192 Ind. 353, 136 N.E. 557 (exception limited).

161 Ind.App. at 456-57, 316 N.E.2d at 397. *See also Loeser v. Simpson* (1942), 219 Ind. 572, 39 N.E.2d 945; *Hottenstein v. Hottenstein* (1922), 191 Ind. 460, 133 N.E. 489. Thus, under our standard of review, since Louise would be incompetent to testify at trial, her affidavit cannot be received and considered to defeat the motion for summary judgment. It is significant that in her affidavit she made no contention that the decedent was of unsound mind, an exception to the rule recited in *Bechert, supra.*

■ Conceding the rule, Louise next argues that there is evidence that the amount of claims exceed the assets of the estate in which event the rule does not apply. She cites no authority for such an exception as applied to will contests, but does cite *Summerlot v. Summerlot* (1980), Ind.App., 408 N.E.2d 820, and *Jenkins v. Nachand* (1972), 154 Ind.App. 672, 290 N.E.2d 763 which hold that in proceedings against an estate where the estate assets are not threatened as where the estate has been administered and closed, or where insurance is involved, the statute is inapplicable. If such is the case this whole case is moot. If not moot, she may not testify. Further, the record shows that at the same time that decedent executed the will, he also deeded the farm to Linda and transferred

to her certain bank accounts. Although the record and arguments do not touch upon it, we are aware that a potential domino effect may occur with respect to the farm and bank accounts as those transfers would be suspect if the will is set aside. A different personal representative could be appointed and those titles could be challenged. We do not perceive that Louise would have filed the will contest action if no benefit could accrue to her.

Louise further argues that her statements can be received to show unsoundness of mind. We observe that her affidavit does not address unsoundness of mind, but only undue influence.

ISSUE II: *Fraud*

■ Under this issue Louise argues that it would amount to fraud if the promises recited in her affidavit were not kept. Louise refers to the statements made by the decedent that she would receive money and be the administratrix and that Linda promised him that in exchange for the farm she would care for him throughout his life. Louise contends fraud thus practiced takes her affidavit out of the operation of the rule under IND.CODE 34-1-14-6. We disagree. The cases cited in Issue I make only one exception, unsoundness of mind. Her affidavit may not be received.

ISSUE III: *Medical Expert*

■ Louise finally argues that Dr. Davis's affidavit should be considered to defeat the summary judgment. Trial Rule 56(E) requires that affidavits be made on the personal knowledge of the affiant and set forth facts as would be admissible in evidence. It further requires that the affidavit show affirmatively that the affiant is competent to testify as to the matters stated therein. Sworn or certified copies of all papers, or parts thereof referred to therein, shall be attached.

Clearly, the factual base, the medical records, upon which Dr. Davis rendered his opinion was hearsay. There is authority

which holds that an expert may render an opinion based on first-hand knowledge of the material facts, or testify on the basis of the facts in the record. He may testify on the basis of assumed facts supported by the evidence or stated to him by way of a hypothetical question. *Ditton v. Hart* (1910), 175 Ind. 181, 93 N.E. 961; *Senco Products, Inc. v. Riley* (1982), Ind.App., 434 N.E.2d 561; *Town of Newburgh v. Jones* (1945), 115 Ind.App. 320, 58 N.E.2d 938.

■ There appears to be some departure from the above rule, however. In *Duncan v. George Moser Leather Co.* (1980), Ind. App., 408 N.E.2d 1332, this court set forth a three-prong test to determine the admissibility of expert opinion when it is based *in part* on a report that is either not in existence or inadmissible as substantive evidence due to the hearsay rule. In order for the opinion to be admissible the following standards must be met: (1) the expert must have sufficient expertise to evaluate the reliability of the report; (2) the report must be of a type normally found reliable; and (3) the report must be of a type customarily relied upon by the expert in the practice of his profession. *Id.* at 1343.

This court also recognized a departure from the rule in *Rosenbalm v. Winski* (1975), 165 Ind.App. 378, 332 N.E.2d 249, *trans. denied.* That case posits that although the opinion may still be attacked, the jury is asked to accept as probative evidence an expert's conclusion based on someone's hearsay assertion of the fact when the jury has no basis for finding the fact to be true. The case recited that many admissible expert opinions are based *in part* upon matters which are hearsay. The rule has been applied to stopping distance tables, tests performed under the control and direction of the expert, and the sale price of other real estate known to experts. Admissibility has been rejected where the medical opinion of a non-treating physician is based in whole or in part upon the subjective hearsay statements of the patient.[1]

---

1. It appears to this writer that where expert testimony is concerned two types of facts are involved. The first set of facts concerns matters which have been developed in a profession as a whole which are applicable to all situations where expertise is required. This would include

For the purposes of this opinion only, we accept the rule that Dr. Davis could testify and render an opinion based on medical records not in evidence. However, we hold that his affidavit is insufficient to create a genuine issue of fact. His only conclusion was that the decedent was susceptible to undue influence. He did not, and of course could not, say that undue influence was practiced. He did not say that at the time of the execution of the will the decedent lacked mental capacity, was under undue influence, duress, coercion, or that fraud was practiced on him.

For the above reasons, this cause is affirmed.

JUDGMENT AFFIRMED.

RATLIFF, C.J., concurs with opinion.

SHIELDS, P.J., concurs in result with opinion.

RATLIFF, Chief Judge, concurring.

An expert may base his opinion on hearsay or otherwise inadmissible evidence. However, he may testify only as to the opinion derived from such evidence and may not be the conduit for placing the hearsay or inadmissible evidence into the record. Thus, those portions of Dr. Davis's affidavit which re-stated the matters reported in the medical records were inadmissible and could not be considered in ruling upon the motion for summary judgment. However, the doctor's opinion was admissible, and, if relevant to the issues could have been considered. The problem is that the doctor's opinion was no opinion at all upon any issue. He merely stated an opinion that the testator was susceptible to undue influence. All persons are susceptible. The question is whether the decedent

was in fact unduly influenced. Dr. Davis's opinion does not address that issue. The non-movants failed in their burden to demonstrate a genuine issue and summary judgment appropriately was granted.

SHIELDS, Presiding Judge, concurring in result.

I concur in result on Issues I and II. While I agree with the majority decision that Louise Lee's affidavit is inadmissible, the majority's cited case authority properly mandates exclusion of the affidavit under IC 34–1–14–7 (West 1983) rather than IC 34–1–14–6 (West 1983) and for that reason I concur in result on Issues I and II. On Issue III, I concur in both Judge Neal and Chief Judge Ratliff's opinions.

---

mortality tables, stopping distance tables, sale prices, medical and scientific phenonomena, including the results of experiments, stock market performances, trade practices, engineering practices, quality of goods and the like. In evaluating a subject an expert brings into play all his knowledge on a subject from whatever source acquired. The second set of facts are the operative facts of the case under consideration. They would include medical records, distances, speed, length of skid marks, damages, mental capacity, acts of duress, acts of undue influence, and other matters which have occurred. In this second situation an expert should not be permitted to become a vehicle for unsworn statements from unidentified sources, gossip, conjecture, or surmise. Such evidence should be brought into the record in the traditional form. Generally, such is the custom in the practice. Here Dr. Davis's whole opinion was based upon hearsay medical records which contain observations about confusion made by persons unknown, presumably hospital personnel.