**Eberal LeMASTER and Walter LeMaster, Appellants–Plaintiffs,**

v.

**METHODIST HOSPITAL OF INDIANA, INC., Appellee–Defendant.**

No. 49A02–9111–CV–531.

Court of Appeals of Indiana, Second District.

Oct. 26, 1992.

Rehearing Denied Dec. 11, 1992.

Gregory P. Schmith, Indianapolis, for appellants-plaintiffs.

David O. Tittle, Karl L. Mulvaney, Dennis F. Cantrell, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for appellee-defendant.

SULLIVAN, Judge.

Eberal and Walter LeMaster appeal the trial court's grant of summary judgment in favor of Methodist Hospital of Indiana, Inc.

We reverse.

■ When reviewing a grant of summary judgment, we accept as true the facts alleged by the nonmoving party. *Majd Pour v. Basic American Medical, Inc.* (1990) 2d Dist. Ind.App., 555 N.E.2d 155. On February 11, 1987, Eberal LeMaster, her husband Walter LeMaster, her son Allen Smith, and his wife Debbie Smith, visited a friend who was a patient at Methodist Hospital. As they were leaving the hospital at approximately 7:30 p.m., they were walking in a hallway located immediately adjacent to the food service preparation area. Walter and Allen were walking side-by-side, and they were followed by Eberal and Debbie, who also were walking side-by-side.

Eberal stepped over a piece of cake that had been "ground into" the floor. Eberal and Debbie proceeded another twenty feet, when Eberal's feet slipped out from underneath her and she fell "hard", suffering injuries to her back, arm, knees, ankle, and wrist. Eberal was taken to the Methodist Hospital Emergency Room several minutes later, where a security guard, James Taylor, interviewed Eberal and Walter concerning her fall. Taylor, accompanied by Allen Smith, went to the location where Eberal fell and inspected the floor. He did not find any substance, cake or otherwise, in the area where the fall occurred. Eberal refused treatment at the Methodist Emergency Room and went home.

The LeMasters filed suit against Methodist for Eberal's personal injuries. The trial court granted a Motion for Summary Judgment submitted by Methodist upon the ground that the LeMasters had produced no evidence that any foreign substance or defect caused Eberal to fall.

■ When reviewing a grant of summary judgment, our standard of review is the same as the trial court's. We must determine whether there exists a genuine issue of material fact which, along with the evidence relevant thereto, was designated to the trial court; and whether the moving party is entitled to judgment as a matter of law. *Babinchak v. Town of Chesterton* (1992) 3d Dist. Ind.App., 598 N.E.2d 1099.

" 'A fact is material if it is decisive of either the action or a relevant secondary issue.' ... A summary judgment proceeding cannot and should not be used as an abbreviated trial.... The trial judge may not weigh the evidence in such a proceeding. In reviewing the propriety of a summary judgment, the facts alleged by the party opposing the Motion must be taken as true." [Citations omitted.] *Lee v. Schroeder* (1988) 1st Dist. Ind.App., 529 N.E.2d 349, 352–53, *trans. denied.*

Following is the pertinent evidence upon the question of what caused Eberal's fall. The record contains no evidence—by way of affidavit, interrogatory answer, or otherwise—indicating that either Walter LeMaster or Allen Smith saw what, if anything, caused Eberal's fall. Eberal herself, although offering statements which may give rise to differing interpretations,[1] ad-

---

1. Methodist tendered the following interrogatory, and received the following response:

"15. State, in detail, your theory or opinion concerning the cause of the incident complained of in this case.

mitted upon deposition that she did not know what caused her to fall:

> "Q [Methodist's counsel] That's what I'm asking you. Did you see any substance that you fell on?
>
> A [Eberal] No. I told you awhile before I didn't see because I was looking straight out. All I seen was the cake that was on the floor and I stepped over it and then I was looking down and then I was looking straight out in front of me like I'm looking at you. And the next thing I know I just went down." Record at 107.

The security guard investigating the incident returned to the scene of the fall moments after it had occurred and found no evidence of any substance on the floor. Finally, after she went home, Eberal examined her shoes and did not find any substance upon them.

There are only two items of evidence which would tend to support the LeMasters' allegations. First, Debbie Smith and Eberal stated that they saw cake ground into the floor approximately twenty feet from the spot where Eberal fell. Second, Debbie Smith submitted an affidavit which reads, in pertinent part:

> "5. That Eberal pointed out a large piece of cake which had been ground and smashed into the floor which we avoided.
>
> 6. That we continued down the hall about twenty (20) feet or so from where the large piece of cake was located and all at once Eberal slipped and went down hard in the hall.
>
> 7. That Eberal was stunned *as she had slipped on some icing* and hit really hard...." (Emphasis supplied.) Record at 120.

The trial court granted summary judgment upon the ground that there was no material issue of fact with respect to causation. That is, the court agreed with Methodist that the LeMasters had presented no evidence that a substance upon the floor had caused Eberal's fall.

In order to reach this result, the trial court necessarily discounted the two items of evidence which the LeMasters offered to show causation. We need not address the question whether evidence of cake smashed upon the floor approximately twenty feet from the place of the fall, standing alone, permits a reasonable inference that it was, in fact, cake upon which Eberal slipped. Were we to agree with the trial court that the link between cake on the floor and a fall twenty feet away is too attenuated to show causation,[2] the probative value of the above-highlighted portion of Debbie Smith's affidavit must be addressed.

The critical inquiry centers upon the precise meaning of Debbie Smith's statement. The LeMasters contend that Smith's affidavit "clearly indicates that [Smith] saw

---

ANSWER: The cause of the incident in question was that a piece of cake had been dropped on the floor just outside the food service preparation area. I did not see the icing which was on the floor and slipped on the icing." Record at 122.

This answer, taken alone, might support a reasonable inference that Eberal somehow knew that she had slipped on icing. For instance, she may have discovered icing upon her shoes or dress, or perhaps she may even have seen the icing on the floor, after she had fallen. However, the instant case permits no such reasonable inference as to the meaning of Eberal's answer. There is ample evidence of record which clarifies that Eberal did not see the cake, at any time, at the spot where she fell, thus negating the reasonableness of the inference the LeMasters would have us ascribe regarding the meaning of her answer.

**2.** This question is a fact-sensitive inquiry, and not susceptible to disposition by mechanical application of common law rules or scrutiny of prior slip-and-fall cases. The evidence most favorable to the LeMasters shows that the food service area is where food is prepared for patients, placed upon carts, and then wheeled to patients' rooms. Interrogatory answers show that the last food delivery occurred approximately one hour before Eberal fell, permitting a reasonable inference that the cake which Eberal and Debbie Smith saw ground into the floor had been there for nearly an hour. The reasonable inference that cake had been on the floor for that length of time, coupled with the facts that the cake was smashed and carts routinely rolled through the area, in turn permits a reasonable inference that cake had been tracked some distance down the hallway. The question is, how far down the hall will the law permit a jury to infer that the cake caused a fall, absent *direct* evidence that puts cake at the precise spot of the fall? Five feet may be reasonable, but twenty feet perhaps is not.

Eberal slip on some icing and hit really hard." Brief of Appellants at 14. That is, the LeMasters posit that Debbie Smith is testifying that *she saw icing on the floor, and she saw Eberal slip on that icing.* Indeed, that is one interpretation of the affidavit. On the other hand, Methodist maintains that the statement is merely conclusory in nature, offering no proof that there was icing at the spot where Eberal fell.

"This is not a direct statement based upon personal knowledge.... This is ... merely a reiteration of Mrs. LeMaster's statement of being 'stunned'.... No statement is made that Debbie Smith saw icing on the floor or felt the floor to see if it was slippery at the point of the fall. Inferential speculation is not enough." [Citations omitted.] Brief of Appellee at 16–17.

If, as the LeMasters contend, Smith's affidavit reflects that she saw icing at the spot where Eberal fell, it clearly creates a material issue of fact upon the question of whether Eberal slipped upon the cake. If, on the other hand, as Methodist contends, the affidavit merely reflects Smith's *conclusion,* and no more, that Eberal *must* have slipped upon cake, it is insufficient to create an issue of fact.

▓▓▓ We note initially that Methodist did not move to strike any portion of Debbie Smith's affidavit. The issue of the affidavit's admissibility is therefore presented for the first time upon appeal. A party complaining that an affidavit is defective has a duty to direct this complaint to the trial court, and failure to do so constitutes waiver. *Paramo v. Edwards* (1990) Ind., 563 N.E.2d 595, 600. Thus, even if the affidavit were conclusory, which would have rendered the trial court's consideration of the affidavit error, the error was waived and we may consider the affidavit upon appeal.[3] *Paramo, supra.* This, however, does not settle the matter.

"Although the portions of the [defective] affidavit which are alleged to be conclusory will thus be considered on appellate review, our inquiry does not end simply because such conclusions alleged [a critical element of plaintiffs' case]. Under T.R. 56(E), a party opposing summary judgment must come forth with specific facts showing that there is a genuine issue for trial." *Paramo, supra,* 563 N.E.2d at 600.

In *Paramo,* after determining that the defendant's objection to the affidavit had been waived, our Supreme Court considered the probative value of the allegedly conclusory portions of the challenged affidavit. We do likewise.

▓▓▓ Affidavits supporting or opposing summary judgment motions must be made upon personal knowledge of the affiant, and must show that the affiant is competent to testify upon the matter included. *Lee v. Schroeder, supra,* 529 N.E.2d at 352; Ind. Trial Rule 56(E). A court should disregard any inadmissible information contained in an affidavit. *Lee, supra,* 529 N.E.2d at 352. The critical inquiry as to Debbie Smith's affidavit is whether she attributed Eberal's fall to cake upon the floor and whether it was based upon personal observation, or whether it was conjecture based upon the fact that cake was on the floor nearby, coupled with the fact that Eberal fell.

▓▓▓ The distinction between "fact" and "conclusion" in this context has been difficult to define.

"There is no conceivable statement however specific, detailed and 'factual,' that is not in some measure the product of inference and reflection as well as observation and memory. The difference between the statement, 'He was driving on the left-hand side of the road' which would be classed as 'fact' under the rule, and 'He was driving carelessly' which

---

**3.** *Coghill v. Badger* (1982) 2d Dist.Ind.App., 430 N.E.2d 405, 406, decided eight years before *Paramo,* supports a broad prohibition upon consideration of *any* conclusory statement, whether of law or fact, for summary judgment purposes. This prohibition, however, is overly broad. The better view, as reflected in cases such as *Henry B. Gilpen Company v. Moxley* (1982) 4th Dist. Ind.App., 434 N.E.2d 914, and culminating in *Paramo, supra,* applies the prohibition only to affidavits containing conclusions of law.

would be called 'opinion' is merely a difference between a more concrete and specific form of descriptive statement and a less specific and concrete form. The difference between so-called 'fact,' then, and 'opinion,' is not a difference between opposites or contrasting absolutes, but a mere difference in degree with no recognizable line to mark the boundary." [Footnote omitted.] 1 *McCormick on Evidence* 42–43 (4th ed. 1992).

The boundary between "conclusion" and "fact" becomes even more vague when discussing questions of fact, as opposed to questions of law. However, in light of the caution with which courts grant summary judgment motions, *Reed v. Dillon* (1991) 5th Dist. Ind.App., 566 N.E.2d 585, the better course is to give an ambiguous statement of fact, such as the one before us, an observational rather than a conclusory context. This is especially so when the witness had an opportunity to observe the matters to which he or she testifies.

> "[T]here is no principle and no orthodox practice which requires a witness having personal observation to state in advance his observed data before he states his inferences from them; all that needs to appear in advance is that he had an *opportunity to observe* and *did observe*, whereupon it is proper for him to state his conclusions, leaving the detailed grounds to be drawn out on cross-examination...." (Emphasis in original.) 7 *Wigmore, Evidence* § 1922 (Chadbourn rev. 1978).

The critical inquiry is thus whether Debbie Smith had an opportunity to observe the matters to which she refers in her affidavit. If she had not been with Eberal at the time of the fall, Debbie Smith's statement that Eberal slipped upon icing would clearly be inadmissible. However, she was walking beside Eberal when she fell, thus placing her in a position to observe the matters which she described in her affidavit.

To the extent her statement is a conclusion, it is a conclusion of facts which she had opportunity to observe, and can be considered by the court. *Cf. Skaggs v.*

*Merchants Retail Credit Association, Inc.* (1988) 3d Dist.Ind.App., 519 N.E.2d 202 (if knowledge and competence of affiant can be inferred from affidavit, court may consider it upon summary judgment). Taken as an observational statement, it is sufficient to create an issue of fact as to whether Eberal slipped upon cake.

We note here that the relative likelihood of the LeMaster's success at trial is immaterial to the instant summary judgment decision. *Majd Pour, supra* 555 N.E.2d 155. Whether Smith's affidavit is grounded in fact is a matter which the parties will necessarily develop at trial.

The summary judgment is reversed and the cause is remanded for further proceedings.

GARRARD, J., concurs.

SHIELDS, J., concurs in all but footnote 1.