Robert R. LAUX, Laura L. Laux, Husband and Wife, and Robert R. Laux, Kenneth L. Laux and Randall D. Laux, d/b/a Laux Farms, Appellants–Plaintiffs,

v.

CHOPIN LAND ASSOCIATES, INC., and Fidelity and Deposit Company of Maryland, Appellees–Defendants.

No. 90A02–9302–CV–45.

Court of Appeals of Indiana, Third District.

June 21, 1993.

Rehearing Denied Sept. 30, 1993.

M. Robert Benson, Timothy Logan, Benson, Pantello, Morris & James, Fort Wayne, for appellants-plaintiffs.

Edward L. Murphy, Jr., Larry L. Barnard, Miller Carson Boxberger & Murphy, Fort Wayne, for appellees-defendants.

GARRARD, Judge.

## I. Facts and Procedural History.

Robert and Laura Laux and their sons, Kenneth and Randall, filed a complaint

against Chopin Land Associates, Inc. and its surety, Fidelity & Deposit Company of Maryland, seeking to recover fees and expenses incurred as the result of the wrongful issuance of a preliminary injunction. The Wells Circuit Court dismissed their claim and denied their motion for partial summary judgment on October 5, 1992. The Lauxes filed this appeal in response.

Robert and Laura Laux owned approximately 123 acres of land in Whitley County, Indiana. In June of 1986 they sold approximately 113 acres of that land to Schrader Real Estate. The land was eventually sold to Chopin in December of 1986. Chopin had bought the land with the intent of developing it for residential purposes.

Kenneth and Randall Laux began raising hogs on the remaining 10 acres in August of 1986. At its inception, there were approximately 30 hogs on the Lauxes' property. By the summer of 1987 there were over 300 hogs. The odor emanating from the Lauxes property substantially interfered with Chopin's ability to market and sell its property for residential purposes.

Chopin filed suit against Robert and Laura in the Whitley Circuit court on January 19, 1988 to abate the hog operation as a nuisance. The case was venued to the Noble Circuit Court which filed a preliminary injunction enjoining all hog operations on the property and requiring Chopin to file a five thousand dollar bond.

Robert and Laura made an appeal to this court seeking protection pursuant to the Right-to-Farm Act which is codified at 34–1-52-4. In a decision published at 546 N.E.2d 115 this court reversed the Noble Circuit Court finding that it erred in concluding that the Right-to-Farm Act did not apply. On rehearing this court vacated its prior decision and, after entering a more detailed explanation of the Right-to-Farm Act, once again reversed and remanded the case to the Noble Circuit Court. That opinion is published at (1990), Ind.App., 550 N.E.2d 100.

On remand the Noble Circuit Court proceeded to trial on Chopin's complaint. On June 24, 1992 the Noble Circuit Court entered a judgment granting Chopin a perma-nent injunction which allowed the Lauxes to continue their hog operation within certain specified limitations.

During the course of the Noble Circuit Court proceedings the Lauxes filed this complaint with the Allen Circuit Court seeking to recover fees and expenses brought about by the wrongful issuance of the preliminary injunction. The case was venued to the Wells Circuit Court which issued a stay of proceedings pending the outcome of the Noble Circuit Court case. Following the Noble Circuit Court judgment, the Wells Circuit Court entered an order granting Chopin's motion to dismiss. The Lauxes filed this appeal in response.

## II. Issues Presented.

The Lauxes present three issues for review which we restate as follows:

1) Whether a party who has been subject to a temporary injunction is entitled to any costs or damages when a much narrower permanent injunction is put into place.

2) If costs and damages are recoverable, whether they are recoverable by individuals who ought to have been named defendants.

3) If costs and damages are recoverable, whether they are recoverable in an independent action.

## III. Analysis and Conclusion.

### A. Standard of Review.

■ The trial court dismissed this action pursuant to Chopin's TR 12(B)(6) motion for failure to state a claim. However, Chopin's motion included evidentiary materials outside of the pleadings. Under such circumstance, Chopin's motion is properly dealt with as a motion for summary judgment. *Schlosser v. Bank of Western Indiana* (1992), Ind.App., 589 N.E.2d 1176, 1178, *reh. denied.*

■ Upon review of a motion for summary judgment our standard of review is the same as that of the trial court: whether there is a genuine issue of material fact which, along with relevant evidentiary sup-

port, was designated to the trial court, and whether the moving party is entitled to judgment as a matter of law. *LeMaster v. Methodist Hosp.* (1992), Ind.App., 601 N.E.2d 373, 374, *reh. denied;* TR 56(C). Where there is no factual dispute, our task is to determine whether the trial court correctly applied the law, *Second Nat. Bank v. Massey–Ferguson Credit* (1985), Ind. App., 478 N.E.2d 916, 917.

## B. Recovery.

Both parties attempt to characterize what has happened below in terms which are not entirely accurate. The Lauxes wish for us to view this as a complete reversal of the preliminary injunction, which would certainly entitle them to a receipt of damages; while Chopin wishes for us to look solely at the fact that a permanent injunction is in place, concluding therefore, that it has ultimately prevailed and the Lauxes are entitled to no damages.

As in many cases, reality is found to be floating somewhere in the middle. While it is true that there is a permanent injunction in place, it is an injunction of a much narrower scope than was originally issued by the Noble Circuit Court. The question to be resolved is what, if any, damages are the Lauxes entitled to as a consequence of the narrowing of the preliminary injunction?

Injunctions are a powerful equitable tool to be used only in clear and plain cases. *Barnard et al. v. Sherley* (1893), 135 Ind. 547, 558, 34 N.E. 600, 602, *reh. denied.* Preliminary injunctions are designed to protect the property and rights of parties from any injury until the issues and equities in a case can be determined after a full examination and hearing. 42 Am.Jur. 2d, Injunctions § 13 (1969). In an effort to protect the party being enjoined, preliminary injunctions are coupled with a bond posted by the opposing party which is available to the enjoined party in the event that he was found to have been wrongfully enjoined. As such, the size of the bond is intended to approximate the damage the enjoined party will incur if it is found that he was enjoined wrongfully. *Howard D.*

*Johnson Co. v. Parkside Develop. Corp.* (1976), 169 Ind.App. 379, 389, 348 N.E.2d 656, 662; *see also,* Note, *Recovery for Wrongful Interlocutory Injunctions under Rule 65(c),* 99 Harv.L.Rev. 828 (1986). Such a bond is required to be posted in Indiana pursuant to TR 65(C). At the time that this preliminary injunction was put into place TR 65(C) read in pertinent part that:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

TR 65(C) (1989). It is clear from the language of the rule, and those cases that have applied it, that when a preliminary injunction is dissolved, and no permanent injunction is put in its place, the enjoined party is generally entitled to compensation for damages he incurred. *Peters v. Davidson* (1977), 172 Ind.App. 39, 47, 359 N.E.2d 556, 562; *Howard D. Johnson Co.,* 169 Ind.App. at 389, 348 N.E.2d at 663. However, it is not clear what, if any, part of the bond the enjoined party is entitled to when a preliminary injunction is dissolved and a narrower permanent injunction is put in its place.

This court has impliedly recognized the right of an enjoined party to recover under these circumstances in *Schultz v. Keel* (1952), 122 Ind.App. 471, 106 N.E.2d 254. In *Schultz,* the defendant was originally enjoined from obstructing twenty feet of the plaintiff's real estate. Upon establishing the permanent injunction, the trial court recognized that it had improperly enjoined the defendant from using fourteen of that twenty feet and narrowed the permanent injunction accordingly. On appeal from that decision this court recognized that the defendant had an independent right of action for any damages he may have incurred as a result of the overbroad temporary injunction. *Id.* at 122 Ind.App. at 478, 106 N.E.2d at 257.

The clearest statement on this issue has come from the First Federal Circuit Court in *N.E. Airlines v. Nationwide Charters & Conventions, Inc.* (1st Cir., 1969), 413 F.2d 335, *reh. denied.* Upon review of the question of whether the defendants were entitled to any damages when the preliminary injunction granted against them was replaced with a narrower permanent injunction, the court stated:

> [T]he defendants are entitled to an opportunity to proceed against [the plaintiff] or its security for whatever damages, if any, they may be able to establish that they suffered by reason of the overbreadth of the preliminary injunction.

*Id.* at 338. Toward this end it has been stated:

> [A] final decree dissolving an injunction in part is a breach of the injunction bond, and renders the sureties liable thereon, as where the temporary injunction is, upon the final hearing, sustained in part and set aside as to a material part or parts. So where on the final hearing, the defendant is decreed substantial rights which had been denied him in the temporary injunction, he has a cause of action.

42 AmJur2d Injunctions § 363 (1969) (footnotes omitted). *See also, Atomic Oil Company of Oklahoma, Inc. v. Bardahl Oil Co.* (10th Cir., 1969), 419 F.2d 1097, *cert. denied* (1970) 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685; *Weber v. Johnston Fuel Liners, Inc.* (1974), Wyo., 519 P.2d 972; *Clem v. Hunz* (1924) 132 Wash. 14, 231 P. 7; *Rice v. Cook* (1891) 92 Cal. 144, 28 P. 219; 40 A.L.R. 987.

■ In interpreting TR 65(C) this court has stated that "the security is intended to compensate the defendant for any damages incurred as a result of the preliminary injunction if he prevails at a later hearing." *Palace Pharmacy, Inc. v. Gardner & Guidone, Inc.* (1975), 164 Ind.App. 513, 515,

329 N.E.2d 642, 644. Without delving into a philosophical conversation regarding what it means to "prevail", we recognize the fact that it is not a black and white issue; rather it is made up of varying shades of gray. While it is true that the Lauxes did not completely prevail in this case, to the extent that they were less constrained by the permanent injunction than they had been by the preliminary injunction, they have in fact prevailed and may be entitled to some compensation. Furthermore, the narrowing of the scope of the permanent injunction implies that the preliminary injunction was, at least in part, wrongful and the Lauxes were entitled to relief from that wrongful enjoinment. *Id.*

In the present action the preliminary injunction was absolute and forbade the Lauxes from raising any hogs on their property. The permanent injunction, on the other hand, allowed the Lauxes a limited right to raise hogs on their property. To the extent that the preliminary injunction prevented the Lauxes from this limited right, it was wrongful and the Lauxes are entitled to relief.

## C.  Recovery by a Non–Party.[1]

■ As part of its motion to dismiss, Chopin argued that since Kenneth and Randall Laux were not parties to the original action establishing the injunction, they were without standing to pursue this claim for damages.

■ TR 65(C) expressly makes recovery available to *"any party* who is found to have been wrongfully enjoined or restrained." TR 65(C) (emphasis added). Kenneth and Randall were not named parties to the original action, nor did they see fit to intervene in the original action. Further, the temporary injunction by which they claim to have been wrongfully enjoined did not reach them, it only enjoined

---

**1.**  Chopin has failed to address the following two issues in its appellee's brief. Failure to respond to an issue raised by the appellant is akin to the failure to file a brief. Under such circumstances, Chopin is subject to reversal upon the Lauxes showing of prima facie error on the following issues. *Hacker v. Holland* (1991), Ind. App., 575 N.E.2d 675, 676, *trans. denied.*

These two issues were addressed by Chopin in its original motion to dismiss, however, the trial court did not directly address them in its final order. For purposes of clarity we will address them here.

their parents.[2] We note *Bratton v. MGK, Inc.* (1992), Ind.App., 587 N.E.2d 134 wherein Bratton attacked the injunction which he was held in contempt of based upon the fact that he was not served with summons or notice of the injunction. In response to the protestor's argument this court stated:

> When Bratton, a non-named party who had actual notice of the existence and the terms of the injunction, chose not to contest the injunction through the orderly processes of law but rather participated in the enjoined activity, he did so at his peril.

*Id.* at 137. Here too, Kenneth and Randall chose not to contest the injunction in the Noble Circuit Court and have done so at their own peril. The only parties who may recover for damages pursuant to TR 65(C) are Robert and Laura.

*D. Recovery in an Independent Action.*

█ In its motion to dismiss Chopin argued, via TR 12(B)(8), that the trial court was without jurisdiction to hear this case since the subject matter of the action was being addressed by the Noble Circuit court.

However, the issue of Chopin's liability on the bond was not raised at the time the Noble Circuit Court granted the permanent injunction. Under such circumstances, this court has held that liability on the bond is properly the subject of a separate action. *Schultz*, 122 Ind.App. at 478, 106 N.E.2d at 257.

The trial court is reversed. This case is remanded for proceedings consistent with this opinion.

STATON and FRIEDLANDER, JJ., concur.

---

2. This is not to say that Kenneth and Randall are permitted to raise hogs on their parents land. Both the preliminary and permanent injunctions enjoined the parents from "permitting any hog raising activity" on their property. Whether Kenneth and Randall have some claim against their parents is not before us.